# CHARLESTON

## PRESTON *v.* WHITE.

Submitted February 8, 1905.   Decided February 28, 1905.

1. OIL AND GAS IN NATURAL STATE—*Realty.*

   Petroleum oil and natural gas are minerals, and in their places are real estate and part of the land.   (p. 281.)

2. OIL AND GAS—*Reservations in Deed of Same— Vested Estate in Grantor.*

   A deed conveying a tract of land contains the clause: "But it is expressly understood and agreed that there is reserved from and

not included in the above sale or conveyance seven-eighths of all and any oil and gas that may be on, in or under said land, with full right and privilege to said Bennett, his heirs and assigns, to develop and operate the same." This excepts, and does not pass to the grantee, the oil and gas in place in the land, and the oil and gas remain vested in the grantor as an actual vested estate and property, and are not an incorporeal hereditament in him, nor a mere license to produce oil and gas, and title in the grantor to the oil and gas is not in abeyance to vest only when the oil and gas shall be developed and brought to the surface by the grantor. A subsequent conveyance by such grantor of such oil and gas vests. in the grantees like estate and property in the oil and gas as was. vested in such grantor. (p. 282.)

3. OIL AND GAS—*Reservations of in Deed Construed.*

In a deed conveying land a reservation of the petroleum oil and natural gas in it has the same effect as an exception of the same would have, if such is the plain intent. (p. 282 )

4  OIL AND GAS—*When Severed From Ownership of Surface—Corporeal Property.*

Petroleum oil and natural gas may be severed from the ownership of the surface by grant or exception, and are then a separate corporeal property from the surface. (p 282.)

Appeal from Circuit Court, Lewis County.

Bill by H. M. Preston and others against G. L. White and others. Decree for plaintiff, and defendants appeal.

*Affirmed.*

LINN & BLAND, for appellants.

W. W. BRANNON, for appellees.

BRANNON, PRESIDENT:

In the division by decree of the lands of J. M. Bennett, deceased, among his children a tract of two hundred and ninety-six and three-fourth acres in Lewis county, on Dry Fork of Polk creek, was allotted to Louis Bennett, the decree providing that all oil and gas in the tract should be for the joint use of Louis Bennett, Gertrude B. Howell, Mary B. Bowie and W. G. Bennett, with the right to develop and operate the same. Louis Bennett conveyed a tract of one hundred and fifty-one acres of the whole tract to G. L. White by deed, 11th March, 1898, the deed, however, containing the following clause: "But it is expressly understood and agreed that there is reserved from and not included in the above sale or conveyance seven-eighths of all and any

oil and gas that may be on, in or under said land, with full right and privilege to said Bennett, his heirs and assigns to develop and operate the same, and said White his heirs and assigns are to pay the taxes on said oil and gas so reserved, developed and operated, which taxes are to be refunded to said White whenever they assume appreciable taxable value." By deed 11th of January, 1901, Louis Bennett and his co-owners of the gas and oil, conveyed seven-eighths of the gas in said tract of two hundred and ninety-six and three-fourth acres to H. M. Preston, F. M. Knapp and W. S. Hoskins, and by deed, 16th March, 1901, Louis Bennett and his co-owners conveyed to said Preston, Knapp and Hoskins seven-eighths of the oil in the said tract of two hundred and ninety-six and three-fourths acres. Said Preston, Knapp and Hoskins later filed a bill in chancery in the circuit court of Lewis county claiming to be owners of seven-eighths undivided of the oil and gas in the entire tract, and conceding that White owned the one undivided eighth in the one hundred and fifty-one acres, and alleging that wells on adjoining lands had shown that there was gas under the one hundred and fifty-one acres and maybe oil, and that such neighboring wells would drain the oil and gas from the one hundred and fifty-one acres, to the great loss of the plaintiffs, unless steps should be taken at once to protect or sell them. The bill charged that the plaintiffs had been unable to induce White to join them in developing, leasing or selling such oil and gas, or in saving the same, and that the plaintiffs were themselves unable to develop, operate, lease or sell their interests therein. The bill further avers that White denied that he and the plaintiffs were joint owners as tenants in common of said oil and gas; that he claims that by force of the deed from Louis Bennett to him, White, and of the two deeds from Louis Bennett and others to the plaintiffs, the plaintiffs have no property in the gas and oil in the one hundred and fifty-one acres until the same should be taken out of the ground; but that while in the ground the oil and gas were the property of White, and that the reservation in the deed from Bennett to him created only an incorporeal hereditament, a mere license to enter upon the one hundred and fifty-one acres to develop oil and gas; and that the plaintiffs must bear alone the burden of the development, free of risk

and cost to him. The bill averred that the oil and gas were not susceptible of partition, and that the interests of all parties would be promoted by a sale of all the oil in the one hundred and fifty-one acres. The bill asked the court to declare the plaintiffs entitled to seven-eighths of the oil and gas in place in that tract, and White one-eighth, and that the oil and gas be sold, and their proceeds so divided. A decree went holding Preston, Knapp and Hoskins to be owners of seven-eighths and White owner of one-eighth of the oil and gas in the one hundred and fifty-one acres, with right to develop such oil and gas, and that the oil and gas were not susceptible of partition, and directing their public sale. From this decree White appeals.

The first question coming up is, have the plaintiffs such a property in the oil and gas in the one hundred and fifty-one acres as to demand a partition by either process of division in kind, that is, division of the oil and gas by lines marked upon the surface, or by the process of sale? For if they have no such right, they can have neither. Sale is only a method of partition when partition in kind cannot be had. A party to have partition must have title, a property in the thing. Have the plaintiffs an estate; a property in the oil and gas? Do they own the oil and gas in their places in the earth? Or do they have a mere license to develop oil and gas, with no property in the substance thereof, without ownership in the very oil and gas in place until they bring them to the surface? Oil and gas in place are a part of the land itself. *Wilson* v. *Youst*, 43 W. Va. 826. But when the owner of land conveys to another the oil or gas, that oil or gas becomes a property distinct from the residue or remnant of the land, distinct from the "surface," as the expression is in the books. The oil and surface are then two properties under distinct ownerships, but the oil none the less a real corporeal property than the surface or soil itself. Being part of the land, and thus owned by the owner of the land, he can sever its ownership. "They (oil and gas) are the subject of grant and conveyance, just as much so as coal or stone buried in the soil." Thornton, Oil and Gas, sections 20, 52; Bryan, Petroleum and Nat. Gas, section 12; *List* v. *Cott*, 4 W. Va. 543; 20 Am. & Eng. Ency. L. (2 Ed.) 771. When thus

severed in ownership, the owners own two separate interests and are not co-tenants, *Virginia Coal & Iron Co.* v. *Kelley*, 93 Va. 332, 24 S. E. 1020; Thornton, Oil and Gas, section 280; *Harris* v. *Cobb*, 49 W. Va. 350. When thus severed in ownership, the minerals become a separate corporeal hereditament, and their ownership is attended with all the attributes and incidents peculiar to ownership of land. *Lillibridge* v. *Lackawana*, 143 Pa. St. 293; 24 Am. St. R. 544 and note 554. Oil and gas are minerals, and fall under these principles. Therefore, when Louis Bennett in the deed to White reserved seven-eighths of the oil and gas, that fraction of those minerals remained as they had been before vested in him and his co-heirs—never passed to White. White owned the surface, the Bennett heirs seven-eighths of the oil and gas as a separate property from the surface, though they were co-tenants of the oil and gas. The Bennett heirs owned the very oil and gas to the extent of seven-eighths of them. It makes no difference that oil and gas are fluent and wandering for the present question. White and the Bennett heirs might lose the oil and gas by their migration from the land. If it were a contest between them and an adjoining owner, after production of oil on his land, then this character of oil and gas would be relevant, but it is not relevant in deciding the character of the ownership of the Bennett heirs in the oil and gas. The oil and gas are deemed yet in the land for the question before us. The oil and gas were in the Bennett heirs before Louis Bennett's deed to White. Of course, they were vested in them as real, corporeal entity and property, a solid substantial estate and property, not a mere license to take them, and they remained in the same plight in those heirs after the deed to White; they were simply severed in ownership. It is true as suggested, but not urged, that the deed to White "reserved," does not "except," the oil and gas. "Except" would have been the proper word, because an exception is of something that is part of the thing granted, existing at the time of the grant, as coal or oil in the land. "The part excepted is already in existence, and is said to *remain* in the grantor. The grant has no effect upon it. A reservation is the creation, in behalf of the grantor, of some new right issuing out of the thing granted, usually an incorporeal hereditament, some-

thing which did not exist, as an independent right, before the grant. Sometimes the terms *exception* and *reservation* are used synonymously." Tiedman. R. Prop. section 843. Severance may be by "conveyance of the mines or minerals only, or by a conveyance of the land with reservation or exception as to the mines and minerals." 20 Am. & Eng. Ency. L. (2d Ed.) 772; *Harris* v. *Cobb*, 49 W. Va. 350. "A reserve of minerals and mining· rights is construed as in an actual grant thereof. It differs not whether the right to mine is by an exception from a deed of the surface, or by a grant of the mines by the owner of the whole estate, therein reserving to himself the surface. A reservation of minerals and mining rights from a grant of the estate, followed by a grant to another of all that was first reserved, vests in the second grantee an estate as broad as if the entire estate had first been granted to him, with a reservation of the surface. Though a reservation is to be construed most strictly against the grantor, still there will be retained in him all that it was the clear meaning and intention of the parties' to reserve from the conveyance." *Marvin* v. *Brewster*, 55 N. Y. 538, 548; Snyder on Mines, sec. 1,007. See 24 Am. St. R. 554. It makes no difference whether the word used is "except" or "reserve," the intent being the matter to be considered. Nowadays we construe deeds as well as wills by the four corners and get at the intention, no matter that the word may not be entirely apt. *Goldsmith* v. *Goldsmith*, 46 W. Va. 426; *Humphrey* v. *Foster*, 13 Grat. 653; *Mauzey* v. *Mauzey*, 79 Va. 537; *Linsey* v. *Eckles*, 99 Va. 668; *McDugal* v. *Musgrave*, 46 W. Va. 509. What kind of a right to minerals exists—whether an actual estate in them, or a mere license to take them—depends on the instrument under which they are claimed. The oil lease generally used in this state gives only a right to explore for oil, and vests no actual estate in the lessee until he produces oil or gas. *Urpman* v. *Lowther Oil Co.*, 53 W. Va. 501. A mere license to produce the minerals confers no actual estate. *Funk* v. *Haldeman*, 53 Pa. St. 229. "There is a great difference between a lease of mines and a license to work mines," the court said in that case. See Bryan, Petroleum and Gas, 27. But the grantees of the Bennett heirs had an absolute estate in seven-eighths of the oil and gas, because those heirs had such an estate,

just as their father, J. M. Bennett, had when he owned the land in its entirety—only now an estate in the minerals was carved out of the entirety and vested in the plaintiffs. From these views it follows that the theory that the Bennett heirs or their grantees had no vested estate in the oil and gas until brought to the surface cannot be sustained. They own those minerals whether they ever developed them or not.

As to the assignment of error that a partition in kind was not made of the oil and gas, it is enough to say that the case of *Hall* v. *Vernon*, 47 W. Va. 295, holds that joint owners of oil and gas only, not owning the surface, cannot have partition in kind by lines upon the surface, but only by sale of the oil and gas and a division of their proceeds.

White's counsel refers to *Dark* v. *Johnson*, 93 Am. Dec. 732, in which occurs this point: "Oil, like water, is not subject to property, except while in actual occupancy. Grant of oil which may be found in a tract of land is not a grant of corporeal hereditament for which ejectment will lie." That language was used for the purposes of the case before the court. The court construed the writing as a mere right to bore for oil, with a provision for conveyance of the land in case oil should be found and as to part of it paying a rental. Before production of oil the lessee brought ejectment for the oil and gas and it was held that ejectment would not lie. How could possession be delivered of them in place? That case did not involve, like this case, the effect of a deed granting or reserving the oil itself. The note to *Gloninger* v. *Franklin*, 93 Am. Dec. 722, shows, that a "Grant of minerals in land is grant of corporeal hereditament." Of course there can be no question of this under a flood of authorities. The case of *Ohio Oil Co.* v. *State of Indiana*, contains nothing to the reverse. 177 U. S. 190.

Decree affirmed.

*Affirmed.*