# CHARLESTON.

JACKSON *et al. v.* DULANEY *et al.*

Decided March 29, 1910.

1. MINES AND MINERALS—*Construction of Deed—Reservation of Portion of Oil.*

The legal effect of a provision in a deed excepting and reserving out of and from the grant at all times thereafter and forever unto the grantor, his heirs and assigns, one tenth of all the mineral oil that may be obtained by the grantee, his heirs and assigns from the land granted, to be delivered on the land to the grantor, his heirs and assigns, his or their agents, free of expense, except the furnishing of barrels or other means of transportation, is to except and reserve in such grantor, his heirs and assigns, to be delivered as stipulated, a royalty of one tenth of all the oil produced, possessing the same quality of estate as royalty reserved in an ordinary lease for oil and gas purposes.

2. SAME—*Oil and Gas Lease—Construction.*

If the owner of the land subject to such an exception and reservation, lease the same for oil and gas reserving a one-eighth royalty, without stipulating how the one-tenth of all the oil reserved in such prior grant is to be discharged, his lessee will be entitled to deduct the same from the one eighth royalty oil reserved in the lease. Affirming prior decisions involving the same proposition.

Appeal from Circuit Court, Wetzel County.

Suit by Francis M. Jackson and others against Moses R.

Dulaney and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

*E. L. Robinson* and *Glenn Snodgrass,* for appellants.

*S. Bruce Hall, T. P. Jacobs, Lee & Markey,* and *Chas. Powell,* for appellees.

MILLER, JUDGE:

Plaintiffs seek an accounting for themselves, their assigns and grantees of one eighth of all the oil produced or that may be produced from 65 20-160 acres of land in Wetzel county.

This tract is a part of a larger tract of 1125 acres, conveyed with covenants of general warranty to Howard Spencer by John S. Morton and wife, by deed, November 25, 1864, recorded in Wetzel county, October 14, 1878.

But this deed contained the following important provision: "Excepting and reserving however out of and from the present grant at all times hereafter forever unto the said John S. Morton, his heirs and assigns, one tenth part of all the mineral oil that may be obtained by the said Howard Spencer, his heirs and assigns, from the said hereby granted tract of land, the said tenth part of all the mineral oil to be delivered on the said tract of land to the said John S. Morton, his heirs and assigns, or his or their agents, free of expense to the said John S. Morton, his heirs or assigns, the cost of furnishing barrels or other means for transporting the same from said land shall be at the said expense of the said John S. Morton, his heirs and assigns."

By deed of May 8, 1882, Howard Spencer, disregarding said exception and reservation, conveyed, with general warranty, one hundred and one acres of said larger tract, including said 65 20-160 acres, to "Westley" Dulaney; and the latter by deed, September 22, 1893, conveyed said 65 20-160 acres in like manner and with like covenants, to said Catherine Jackson, who by deed of the same character, December 29, 1898, conveyed it to her co-plaintiffs, Stephen W. and Francis M. Jackson, who, with their wives, by deed, June 30, 1903, united in a deed to M. R. Dulaney, whereby they granted and con-

veyed to him 46 and 2650-5495 acres out of said 65 20-160 acre tract, but reserving "all the oil and gas coal and all minerals" that might be underlying the same, with the exception of one hundredth part of the two thirds of the one sixteenth of the royalty oil or gas, and also reserving the right to lease and operate for oil and gas and also mining rights for coal and all minerals and to take all the rentals that might be paid for oil and gas.

By lease contract, March 22, 1900, the said Catherine Jackson and F. M. and Stephen W. Jackson leased to L. G. Robinson and W. J. Criswell, a tract of 125 acres, covering the said 65 20-160 acres, upon the usual terms, reserving the usual one eighth part of the oil as royalty and $300 per year for each gas well.

Afterwards, April 13, 1900, said Catherine Jackson, and Stephen W. and F. M. Jackson, their wives joining therein, attempted to convey to the Linden Oil Company, a corporation, defendant herein, fifteen sixteenths of all the oil and gas underlying three tracts, including said 65 and 20-160 acre tract, together containing 145 acres, with the right of entry and to drill for oil and gas, but subject to the lease then on said land.

The Criswell Oil Company acquired title by assignment to said lease of March 22, 1900, and entered thereunder and obtained oil in paying quantities on the said 65 20-160 acres.

The South Penn Oil Company, defendant, by deed from Waite H. Conaway and wife, June 11, 1901, acquired right and title to the oil and gas reserved in the deed from said Morton and wife to Howard Spencer, Conaway having purchased the same from said Morton by deed, March 8, 1901. The latter deed was recorded March 12, 1901, the former January 12, 1903, prior to the discovery of oil on the said 65 20-160 acres by the Criswell Oil Company. The latter company had actual and constructive notice of the rights claimed by the South Penn Oil Company under said deed, before drilling.

The decree appealed from adjudged that seven eighths of the oil, being the working interest, theretofore or which might thereafter be produced from said 65.20 acres belonged to the Criswell Oil Company; that the South Penn Oil Company, was entitled to one tenth of all the oil theretofore or that might thereafter be produced, being a part of the royalty oil, excepted

and reserved, and owned by it, under the Morton exception and reservation, and which should be delivered to the pipe line to its credit free of all cost; and that the Linden Oil Company was entitled to one fortieth of all of said oil, being the balance of the royalty oil to be likewise delivered to the pipe line to its credit free of all cost.

The plaintiffs and appellants complain that whereas at the time of their lease to Robinson and Criswell, under which the Criswell Oil Company entered and produced oil from the 65 20-160 acres, they owned at least nine-tenths of all the oil in and under said tract with right to operate, lease or sell the same, and reserved, as the only consideration for said lease, one-eighth of all the oil produced, the effect of the decree is to deprive them of the entire and only consideration therefor, to-wit, the one-eighth royalty reserved, except only the one-fortieth decreed in favor of their grantee, the Linden Oil Company, and renders them liable, perhaps, to the latter company for the residue of the one-sixteenth conveyed by their deed to that company of April 13, 1900.

If the decree below has properly construed and given legal effect to the deeds, grants, exceptions, reservations and leases involved, and decreed the oil to those legally entitled thereto, the appellants have by their deeds and contract simply undertaken to convey more oil than they owned, and by their own voluntary acts incurred all consequent liabilities, whatever they may be.

The briefs and arguments of the learned counsel are mainly devoted to a discussion of the construction that should be given the exception and reservation in the Morton deed. Counsel for Criswell Oil Company, asks: Does the language create: (1) an exception of the oil in place, retaining in Morton or his assignee ownership of the oil in place, real estate; or (2) a lien or incumbrance in his or their favor to secure delivery of some portion of the oil which may be produced, and if so, is the lien upon the land, or upon the oil which may be obtained; or (3) a covenant or condition running with the land; or (4) a rent; or (5) merely a personal contract; or (6), nothing? He then proceeds to answer these several inquiries, with reference to the character and qualities of the several estates and interests supposed, and by process of elimination concludes, that at the

most the exception or reservation amounts to a mere personal contract or duty of Spencer, or if upon his assigns, including the Criswell Oil Company, it would still be a personal duty, remediable only by action at law; but that as the last mentioned duty could only effect Spencer's assigns in case it were a covenant running with the land, and, as it is claimed, it has no such quality, the personal duty is not imposed upon it, and as to it the provision in the deed of Morton is nothing.

The argument for South Penn Oil Company is based on the legal distinction between an exception and a reservation in a deed. Citing the authorities, and considering the nature of the provision and its position in the premises of the deed, it is contended that it amounts to an exception, and a retention by Morton of one tenth of the oil in fee, in place.

In view of our recent decisions we deem it unnecessary to enter upon a re-consideration of the questions presented. The decree appealed from is in entire accord with the rules and principles enunciated in *Knotts* v. *McGregor,* 47 W. Va. 566; *Preston* v. *White,* 57 W. Va. 278; *Headley* v. *Hoopengarner,* 60 W. Va. 626, and *Kilcoyne* v. *Southern Oil Company,* 61 W. Va. 538. In *Preston* v. *White,* at page 283, it is said: "It makes no difference whether the word used is 'except' or 'reserve,' the intent being the matter to be considered. Nowadays we construe deeds as well as wills by the four corners and get at the intention, no matter that the word may not be entirely apt." The *Hoopengarner* and *Kilcoyne* *Cases* are directly in point. The fact that those cases involved grants and not exceptions or reservations of the oil, cuts no figure. The rule is the same in either case. In the *Hoopengarner Case* it is true the parties by the signing of division orders for the oil gave construction to the contract, estopping them, but the opinion is not put on that ground, for it is said, at page 636, that the prior conveyances by the ancestor "should be construed to be one half of the prevailing one-eighth royalty."

Moreover, the same provision of the Morton deed was construed in *Morris* v. *Smith and others,* opinion by Judge BRAN-NON, decided February 5, 1907, the very day the *Kilcoyne Case* was submitted for decision. The latter case was decided March 12, 1907. A rehearing was allowed in *Morris* v. *Smith,* it appears, April 26, 1907, but the case was afterwards settled

and compromised out of court, and dismissed here, so that the opinion filed on the original hearing never went down as the final decision of the Court. We learn from a memorandum made at the time of granting the rehearing that the Court then entertained some doubt whether, as decided, the South Penn Oil Company, assignee, and then in possession and operating under the lease from Dulaney, having bought in the outstanding interest, was entitled to deduct out of the royalty of one eighth the one tenth reserved in the Morton deed, or should be reimbursed simply the cost of getting in that outstanding interest.

In this case the South Penn Oil Company is not lessee. It is simply here claiming its right to the oil according to the provisions of the Morton deed, from another who is lessee, and its position is not different from the owner of the one sixteenth, or the one half of the oil conveyed in the *Kilcoyne* and *Headley Cases.*

That part of the opinion in *Morris* v. *Smith* particularly relied on is: "It cannot be controverted that the reservation clause in Morton's deed to Spencer has effect to reserve to Morton a right to have, upon the development of oil, a one-tenth share of it. It reserved a fee. Its language does not seem to reserve a distinct undivided interest or share in the very oil in place, but a tenth of the oil when produced and brought to the surface, since it, the deed, conveys the land and all oil in it, contemplating that Spencer would develop the oil, and out of the total production deliver and render unto Morton one tenth, free of expense to him, Morton furnishing barrels for it. In other words it reserved a royalty. Probably it reserved oil in place. Spencer and his alienees were bound to render that royalty or fraction of total production of oil as produced. It imposes on them a burden binding on them and any one into whose hands the land should afterwards go. But if we say, under *Preston* v. *White,* 57 W. Va. 278, that it reserved the very oil itself, yet it did not confer upon Morton right to develop it himself, but a right to a share when developed by Spencer, a royalty. It seems immaterial whether it reserved oil in place or mere naked royalty. But I have no doubt it reserves oil, the right to demand oil in kind."

It may or may not have been technically correct to say, as

was said in this opinion, that the provision of the deed "re-served a fee," or that "it probably reserved oil in place." We do think, however, that the provision perfectly describes a royalty in the oil, and that it was strictly correct to say, as was distinctly said, and as it was intended to hold, that it reserved a royalty in the oil, possessing the same quality of estate as royalty reserved in the usual oil lease.

This construction is supported by our previous decisions re-ferred to, and without overthrowing them, we can see no escape from the conclusions reached in the construction of the deed intended in *Morris* v. *Smith*.

Another question presented is that Morton and his assignees, the South Penn Oil Company, have lost their rights to the com-plainants and their assignees by adverse possession, non entry and non payment of taxes. This question we think also fore-closed by the decisions in *State* v. *Low,* 46 W. Va. 451; *Peterson* v. *Hall,* 57 W. Va. 535; *Wallace* v. *Elm Grove Coal Co.,* 58 W. Va. 449; *Higgins* v. *Coal Co.,* 63 W. Va. 229; *Preston* v. *White, supra; Toothman* v. *Courtney,* 62 W. Va. 167, and lastly in *Kiser* v. *McLean,* decided March 22, 1910, and not yet reported, 67 S. E. 725. Points three, four and five of the syllabus of the last case are as follows: "3. Mere possession of the surface of land as to which the title to the oil and gas in place thereunder has been severed is not possession of that oil and gas. 4. Oil and gas severed in title from that of the land under which they lie are not in the possession of the owner of the surface, unless he takes actual physical possession of them, as by drilling wells into the same. 5. On a claim of forfeiture for non-entry of oil and gas which have been severed in title from that of the land under which they lie, it will be presumed that the land was assessed and taxed as a whole at the time of the severance, that it has since been carried on the land books in the same manner, and that the taxes have been paid on the land as a whole, when the contrary does not appear."

Seeing no error therein we affirm the decree below.

*Affirmed.*