**GUESS et al. v. HARMONSON et ux.**
(No. 11896.)

Court of Civil Appeals of Texas. Fort Worth.
Jan. 14, 1928.

1. Mines and minerals ⬅79(1)—Instrument conveying one-half royalty interests held to show intention grantees should receive royalty only on minerals' severance from land and should not receive rentals from lease.

Instrument stating landowners had granted, sold, bargained, conveyed, assigned, and set over one-half their equity in oil and other mineral royalties *held* to show parties' intention grantees should receive only one-half of royalty in oil and other minerals after severance from land, and should not be entitled to bonus or rentals arising from oil and gas lease or other mineral lease.

2. Mines and minerals ⬅79(1)—Conveyance stating mineral rights, etc., were conveyed held to mean rights, title, etc., in royalties only.

In instrument by landowners conveying one-half their oil and other mineral royalties, expressions to the effect that the rights, title, interest, powers, equity and revenues derived were conveyed *held* to refer to and include only the rights, title, interest, powers, equity, and revenues arising out of the royalties, to which the expressions were, apparently, limited by the instrument when construed as a whole.

Appeal from District Court, Young County; E. G. Thornton, Judge.

Suit by Zatthu Harmonson and wife against J. I. Guess and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

Penix & Penix, of Graham, for appellants.
Marshall & King, of Graham, for appellees.

CONNER, C. J. Zatthu Harmonson and wife, Sallie K. Harmonson, were the fee-simple owners, on May 11, 1918, and long prior thereto, of 240 acres of land situated in Young county, Tex., to be hereinafter more particularly referred to. On October 15, 1917, for a recited consideration of $1 in cash, they leased the land to N. C. Harlan, trustee, "for the purpose of prospecting for oil, gas, and sulphur and the production of the same therefrom." This lease, which was duly recorded and generally in a familiar form, granted the right of ingress and egress in and over the land to prospect, drill, mine the same, and with the right to erect, maintain, and remove all necessary and proper structures, etc. The lease conveyed to Harlan "all of the oil, gas and sulphur in and under said land," subject to certain royalties. The royalties specified were on oil "a quantity equal to one-eighth of all produced and saved, the same to be delivered at the well or to the credit of the lessor in the pipe line to which the wells may be connected; on natural gas, at the rate of $200 per annum, payable quarterly for each well producing gas exclusively, and from which gas is then being used or sold off the premises."

The lease further provided:

"If operations for the drilling of an oil or gas well are not begun on said land on or before the 25th day of September, 1918, this lease shall terminate as to both parties unless the lessee on or before shall pay or tender to the lessor or to the credit of the lessor in the Beckham National Bank at Graham * * * the sum of $300, which payment or tender may be made by check or draft of the lessee and, however made, shall operate to confer on the lessee the privilege of deferring the time limit for six months from said date. Thereafter in like manner and upon like payments or tenders of said amount the time limit may be further deferred for additional periods of six months successively provided always that this lease can-

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

not be kept in force by such payments in the absence of drilling operations for a longer period than five years from the date above set forth. But nothing in this paragraph contained shall obligate the lessee against its wish or option to make any such payment or to drill or otherwise carry on operations hereunder."

It also provided that:

"If the lessee shall sink a well or shaft and discover oil, gas or sulphur in paying quantities, in and under the above described land, then this lease shall remain in full force and effect for ten years from such discovery and as much longer as oil, gas or sulphur shall be produced therefrom in paying quantities."

The lease expressly conferred upon the parties the privilege of assigning their interests, and contained other provisions which we have not specified since they are not thought to be material in our determination of this appeal.

On the same day, to wit, October 15, 1917, N. C. Harlan, trustee, and others interested therein, duly assigned the above lease to the Clear Fork Oil & Gas Company, a corporation. It was agreed that the lease so assigned expired and terminated previous to December 10, 1925. Previous to December 10, 1925, however, to wit, on May 11, 1918, Harmonson and wife executed and delivered to J. I. Guess the following instrument:

"The State of Texas, County of Young:

"Know all men by these presents:

"That Z. Harmonson and wife, ———— Harmonson, of Young county, state of Texas, for and in consideration of the sum of seven hundred twenty dollars cash to us in hand paid by J. I. Guess, the receipt of which is hereby acknowledged, have this day granted, sold, bargained, conveyed, assigned and set over and by these presents do grant, sell, bargain, convey, assign and set over unto the said J. I. Guess the following described rights, title, interest, powers and equity in and to the royalties in oil, gas and other minerals in and under the following described land and premises, to wit: It is the intention to convey and assign to the said J. I. Guess an undivided one-half (½) interest in and to the royalties to be derived from the production of oil, gas and other minerals in and under the following described 240 acres, located in the county of Young, state of Texas, known and designated as follows: [Here follows a complete description of the land.]

"It is the intention of this instrument to convey to the said J. I. Guess, as above set forth, an undivided one-half (½) interest in and to the royalties derived, or to be derived, from the development, mining and production of oil, gas and other minerals from the above mentioned 240 acres, and this conveyance and assignment transfers an undivided (½) interest in and to all the royalties in the oil, gas and other minerals in place, and by the term royalty or royalties is meant all such royalties and revenues as shall be derived by the grantor and the grantee herein, proportionately, from the exploration, mining, drilling, development and production of oil, gas and other minerals, from the aforesaid tract of which the grantee herein shall receive undivided (½) of

the total royalties and revenues to be so derived. The grantors covenant that they have good and indefeasable title in fee simple to the land above described, except a certain oil and gas lease heretofore made to Clear Fork Oil & Gas Company dated October 15, 1917, and recorded in the Deed Records of Young county, Texas, vol. 67, p. 58, which lease is referred to and made a part hereof for a better description of the royalties reserved by the grantors in said lease, which are the royalties contemplated by this assignment. The grantors covenant that they will make, execute, acknowledge and deliver to the grantee herein mentioned all the necessary and proper division orders or other appropriate instruments necessary for the division of said royalties at such time as the grantee shall request same.

"The grantors further covenant and agree that in the event the lease now on said land shall for a reason or for no reason be canceled, abandoned, surrendered, or forfeited, either by lawful action, or without such action, that the rights of the parties hereto shall nevertheless remain in full force and effect and that in the event of the abandonment, cancellation, surrender or forfeiture of the said lease, the parties hereto will and shall join each other in the erection and delivery to others, that is to some other solvent oil company or individual, in a lease substantially like the one now in force, the royalties, however, to such additional lease, if any, are to be agreed upon.

"The consideration first mentioned applies to all the covenants herein set forth, and it is expressly stipulated that this contract is not personal, but is a contract and covenant running with the land and to be held as an interest therein, and this contract in all its provisions shall be binding upon the heirs, administrators, assigns, executors, and legal representatives of whatsoever name, of the parties hereto and that it, this contract, would not otherwise be made and that the rights, privileges and benefits thereto shall inure to the heirs and assigns of the parties hereto as herein stipulated.

"If the estate of either party hereto is assigned, sold or conveyed, and the privilege of assigning same either in part or in whole is expressly allowed, the covenants hereof shall extend to the same assigns and their successive assigns.

"It is expressly understood, however, that the grantors herein in nowise pass title to the surface or realty either in part or in whole to the land above described, but this instrument is only intended to convey an undivided one-half (½) interest in and to the royalties as above set forth.

"To have and to hold unto the said J. I. Guess and to his assigns forever, in the proportion and interest above set forth and subject to the terms of the original lease, or any lease that may hereafter be made in accordance with the provisions of this contract.

"In testimony whereof we have hereunto set our hands at Graham, this the 11 day of May, A. D. 1918.          Zaithu Harmonson.

"Sallie K. Harmonson."

At the time of the execution of the above conveyance by Harmonson and wife to Guess, the oil and gas lease, executed by Harmonson and wife to N. C. Harlan, trustee, and as-

signed by said trustee of the Clear Fork Oil & Gas Company, had not expired and was in full force.

After the termination of the lease by Harmonson and wife to Harlan, to wit, on December 10, 1925, Harmonson and wife and J. I. Guess, and others who in the meantime had acquired specified interests under conveyances from J. I. Guess, executed and delivered to F. F. Nigh an oil and gas lease, for a consideration of $10 in cash and covenants specified, on 160 acres out of the 240 acres originally leased by Harmonson and wife to Harlan, the lessee Nigh therein agreeing to deliver to the credit of the lessors, free of cost, "the equal one-eighth part of all oil produced and saved from the leased premises," and "one-eighth of the net proceeds of the sale for the gas from each well where gas only is found."

The lease to Nigh was made to terminate before the 10th day of December, 1926, in the event no well was commenced on the land before that time, unless the lessor should pay or tender at a bank specified the sum of $300, which should operate as a rental covering the privilege of deferring the commencement of a well for 12 months. In like manner and upon like payments or tender the commencement of a well might be further deferred for like periods of the same number of months, etc. This lease was thereafter duly assigned by F. F. Nigh to the Humphreys Corporation on May 14, 1926. It further appears that in accordance with the terms of the Nigh lease there had been paid into the specified bank to the credit of Nigh's lessors $800 as an annual rental for the privilege of deferring the commencement of a well for 12 months from December 12, 1926.

Harmonson and wife testified that the names of J. I. Guess and others claiming under him were not signed to the lease dated December 10, 1925, when executed by them to F. F. Nigh, that Nigh paid no bonus therefor, and that no lease rental under the lease to Harlan, trustee, and later assigned to the Clear Fork Oil & Gas Company, was paid to any defendants; that none of the defendants ever made any claim for rentals due and payable under the Clear Fork Oil & Gas Company lease, which was in force at the time of the conveyance by plaintiffs to J. I. Guess; that rentals under said lease were duly paid for several years; that they never orally agreed with the present defendants to take one-half of the rentals and bonus money, and that no claim therefor by said defendants had been made until some time after the Nigh lease was executed and about the time the annual rentals were due thereunder, when they heard that the defendants were claiming one-half of the rentals due under the lease.

J. I. Guess testified, in substance, that he was not to receive any rentals under the oil and gas lease to him of the 240 acres exe-

cuted by Harmonson and wife on the 11th day of May, 1918, nor under the lease to Harlan, assigned to the Clear Fork Oil & Gas Company, but that the agreement between him and plaintiffs at the time he purchased the mineral lease was that he should receive his proportionate part of the rentals due under any other lease after the expiration of said lease to the Clear Fork Oil & Gas Company, and that when he first saw the lease to Nigh it had already been signed by Harmonson and wife.

The foregoing state of facts was made the basis of this suit, instituted by Harmonson and wife against J. I. Guess and others claiming under him and the First National Bank of Graham, to determine the rights of the parties under the conveyances referred to and settle the controverting claims of the defendants.

The contention of plaintiffs was and is that they were the fee-simple owners of the land in question covered by the lease to Guess, and that such lease conveys only a one-half interest in the royalties from oil and gas and other minerals when and after they are severed from the land, and does not entitle the defendants to share in any of the rentals or bonus money arising from any lease made at any time covering said land.

The defendants, however, contend that under the proper construction of said instruments they are entitled to one-half of the bonus money and rentals arising from the lease at any time made on said land described in said instrument.

It is thus seen that the crux of the controversy presented by the record is, which of the litigating parties is entitled to the rentals or sums paid and to be paid as bonuses, or for the extension of time limits within which actual drilling and development of the land in controversy under the terms of the leases executed by Harmonson and wife after the termination of the lease to Harlan, which was in full force on the date of the lease to J. I. Guess. It is undisputed that the aggregate sum of $800 of such rentals so paid is now on deposit in the First National Bank of Graham. The right of J. I. Guess and those claiming under him must depend on the legal effect of the instrument executed by Harmonson and wife to J. I. Guess on the 11th day of May, 1918.

[1] The case was tried before the court without a jury, and the court found:

"That the intention of the instrument in controversy as a whole shows the evident intention of the parties that the grantees or parties holding under said instrument should have, take and receive only one half of the royalty in and to oil, gas and other mineral after the same should be severed from the land, and that they should not be entitled to any bonus or rentals arising from an oil and gas lease or mineral lease made at any time from said land."

Judgment was accordingly rendered in favor of plaintiffs Harmonson and wife for the $800 rental money on deposit in the First National Bank of Graham, denying to defendants any right thereto, from which judgment the defendants have prosecuted this appeal.

We are of the opinion that the court correctly construed the conveyance to J. I. Guess and rendered the proper judgment. This instrument, which is the basis of the rights claimed by appellants, as we construe it, does not convey a fee-simple estate to the minerals in place or in the lands therein described. The express intention was to convey and assign an undivided one-half interest in and to the royalties derived from the production of the oil, etc.

[2] The conveyance in not less than four different places is limited to a one-half interest in the "royalties." The instrument refers to the lease executed by the Harmonsons, dated October 15, 1917 (evidently the one to Harlan hereinabove described), for "a better description of the royalties reserved by the grantors in said lease, which are the royalties contemplated by this assignment." By reference to the Harlan lease it will be seen that the royalties mentioned on oil were "a quantity equal to one-eighth part of all oil produced and saved from the leased premises," the same to be delivered at the wells or to the credit of the lessor in the pipes to which the wells may be connected. It may be further noted that in the lease to Guess the grantors covenant to "execute, acknowledge and deliver to the grantee [Guess] herein mentioned all the necessary and proper division orders, or other appropriate instruments necessary for the division of said royalties at such time as the grantee shall request them." These expressions, and others, exclude in our judgment the conclusion that the lease to Guess as a whole was intended to convey an undivided interest in minerals in place, within the meaning of those authorities holding that a grant to oil or other minerals in place is a conveyance of real estate. Nor do we think expressions in the lease, relied on by appellants, to the effect that "the rights, title, interest, powers, equity and revenues" derived are conveyed, require a construction of the instrument other than that given it by the trial court and which we approve. We think that such expressions must be held to refer to, and only include, the rights, title, interest, powers, equity, and revenues arising out of the "royalties" to which the expressions are apparently limited by the instrument when construed as a whole. In Thornton's Law Relating to Oil and Gas (2d Ed.) p. 288, it is said:

"Royalty is another term for rent, but is limited * * * to rents due for the right or privilege of taking minerals, oil or gas out of a designated tract of land. * * * Its true significance must be read or determined in connection with the rights granted. So care must be taken to distinguish between rent and royalty in connection with gas and oil leases. Rent is the term applied to the privilege given to bore for gas and oil and for delay in beginning operations; while royalty is a certain percentage of the oil after it is found, or so much per gas well developed."

In Summers' "Oil and Gas," c. 17, in discussing the subject of rents and royalties, it is said, among other things, in section 189, that:

"The consideration most usually given for the privilege of producing oil is a share of the oil produced from the land, usually one-eighth, to be delivered to the lessor in tanks or pipe lines on the premises."

In the case of Caruthers v. Leonard (Tex. Com. App.) 254 S. W. 779, in an opinion by Section B of the Commission of Appeals, approved by the Supreme Court, it is held, in substance, that a lease conveying oil and gas in place with a right to enter and appropriate creates a determinable fee, or fee-simple determinable in the oil and gas in place, and not an estate upon condition subsequent, the only estate remaining in the lessor being a mere possibility of reverter, and that while such possibility of reverter is assignable that a conveyance of an undivided one-half interest in minerals, in terms subject to existing mining lease, conveyed only a one-half undivided interest in possibility of reverter under a prior lease to another, not including rentals payable under such former lease.

Without further discussion, we conclude that the judgment below should in all things be affirmed.