O'NEAL *v.* BANK OF PARKDALE.

Opinion delivered January 20, 1930.

*Y. W. Etheridge,* for appellant, O'Neal.

BUTLER, J. Mrs. Laura D. Fitzhugh and her two sons, Davis and Thomas B. Fitzhugh, conveyed by their warranty deed to M. M. O'Neal a farm owned by them situated in Ashley County, Arkansas, in which deed there was the following reservation: "The grantors reserve a one-sixteenth interest in all oil, gas and other mineral rights and properties in said lands for a period of ten years from this date." After the execution of

this deed, O'Neal and his wife executed an oil and gas lease on said lands to Howard W. Morris; Laura D. Fitzhugh, Davis Fitzhugh and Thomas B. Fitzhugh, joining in the execution of this lease. The same was the ordinary "unless" lease used in this State, by the terms of which the usual one-eighth royalty was reserved by the lessors, the lessee agreeing to begin drilling operations on the land for oil and gas on or before February 16, 1929; a failure to begin operations within that time working a forfeiture of the lease "unless" the lessee, on or before that date, should pay to the lessor's credit in the Parkdale Bank the sum of $400, which sum, when paid, should operate as a rental, and confer the privilege of deferring the commencement of a well for twelve months from said date. In like manner, and upon like payments, the commencement of a well might be further deferred for the same period for a given number of years.

The Texas Company, assignee of Howard W. Morris, having failed to begin the drilling of a well upon the land on or before the date named, paid to the designated depository $400 for an extension of time as stipulated. The bank being doubtful to whom the money should be paid, M. M. O'Neal instituted this action claiming the entire sum. The Texas Company and Bank of Parkdale were made parties, and the Fitzhughs answered, claiming a one-half interest in the funds deposited. The case was heard by agreement of the parties on the complaint, its exhibits, and the other pleadings filed therein, which were the answer of the Fitzhughs, the separate answer of the Bank of Parkdale and a demurrer of the Texas Company. The court sustained the demurrer of the Texas Company, directed the Bank of Parkdale to pay the sum in its hands into the exchequer of the court, saving it harmless of costs, and decreed that the clerk of the court pay out of said funds the cost incurred, and one-half of the balance to O'Neal and one-half to the Fitzhughs. O'Neal has appealed from that part of the decree

awarding one-half of the funds to the Fitzhughs, and the Fitzhughs have appealed from that part of the decree taxing one-half of the costs against them.

Since petroleum is the only mineral for which exploration has been made in Ashley County and southern and southeast Arkansas, and one-eighth of that mineral produced is the customary royalty retained, it is clear that this was the mineral in the minds of the parties at the time of the execution of the deed from the Fitzhughs to O'Neal. No oil has as yet been produced and discovered in the locality in which the demised premises are situated, and the territory is what is denominated by oil prospectors as "wild-cat" territory. In such territory the cost of drilling oil wells is much larger than in proved territory, and the discovery of oil in paying quantities is a mere possibility only. As has been well stated by the learned chancellor, "To employ the idiom of the oil fields, this part of the State is 'wild-cat' territory, as distinguished from proved fields. The explorer hazards as much, or more, financial outlay in his efforts to discover oil or gas in an unproved field as one who wagers his money on a hundred-to-one shot in a horse race, and the agony of suspense is much greater prolonged. To induce one to expend the money and labor incident to sinking a well in search of oil and gas, the explorer exacts a contract of the owner of the prospective or hoped for mineral, whereby the explorer takes seven-eighths of all he discovers, with one-eighth to the owner. This should fix the value of such minerals in place to both explorer and owner, and furnish a basis for transactions therein. Of course, in the first instance, all of such mineral in place belongs to the owner, but it has no actual value while in place, and costs seven-eighths in volume and value to produce it."

It is therefore reasonable that one having only the right of one-sixteenth of the oil discovered on a farm in wild-cat territory could have no intention of exploring same, but could only hope for the exploration to be made

by another. This, when it appears from the language used in the deed that there was not an exception of the oil and gas, or any portion thereof, from the conveyance of the fee simple estate, but a reservation only of an interest in the same for a limited time, makes it apparent that the right reserved was not an estate in fee, but in the nature of a chattel real to become vested when the oil and gas has been discovered and reduced to possession. Therefore, the extent of appellee's right under the reservation in her deed would be one-sixteenth of the oil and gas, whenever discovered and the product secured, providing, such discovery and production should be made within the time limit named in the reservation.

Attorney for the appellant cites the case of *Jackson* v. *Dulaney,* 67 W. Va. 309, 67 S. E. 795, as applicable to the instant case. In that case it is held (quoting syllabus): ''The legal effect of a provision in a deed excepting and reserving out of and from the grant at all times thereafter and forever unto the grantor, his heirs and assigns, one-tenth of all the mineral oil that may be obtained by the grantee, his heirs and assigns from the land granted, * * * is to except and reserve in such grantor, his heirs and assigns, to be delivered as stipulated, a royalty of one-tenth of all the oil produced. * * * If the owner of the land subject to such an exception and reservation lease the same for oil and gas reserving a one-eighth royalty, without stipulating how the one-tenth of all the oil reserved in such prior grant is to be discharged, his lessee will be entitled to deduct the same from the one-eighth royalty oil reserved in the lease.''

The distinction between that case and the instant case is that in that case the exception from the original conveyance was an interest in the fee, whereas, in the case at bar, there was a reservation for a limited time of an interest therein. The chancellor, in his precedent for a decree, used the expression, ''when the Fitzhughs and O'Neal, joint owners of the real value of the pros-

pective mineral property supposed to lie beneath the Ashley County property, leased the land for exploration, they became co-adventurers in an operation designed to yield to each of them one-sixteenth of any production, or one-eighth between them," so that he doubtless inferred that said parties were joint owners in the mineral property. In this we think he was mistaken. By virtue of the deed O'Neal became the owner of the title in fee simple to the property conveyed, and included in the lease thereafter executed, subject only to the limited reservation of a one-sixteenth interest in the mineral. He was the unconditional owner, when the lease was executed, of fifteen-sixteenths of the mineral, and of the entire surface of the land, and he could only be injured by entry upon the surface, and had the right to grant on any terms he might choose and for any purpose the privilege to enter thereon. The joining of Mrs. Fitzhugh and her sons in the lease was therefore unnecessary, as her rights were limited to a one-sixteenth interest in the minerals below the surface to become her property, when any such might be discovered and raised to the surface.

The Texas Company, present owner of the lease, in consideration of seven-eighths of the total production, has obtained the privilege of entering upon the lands with the necessary equipment and drilling wells for the discovery of oil. Not having begun its operations within the time agreed, it has, as provided in the lease, paid $400 for an extension of the privilege.

In an analogous case, *Caruthers* v. *Leonard*, 254 S. W. (Tex.) 779, one Evans made an "unless" lease, similar to the one in the instant case, in which the lessor agreed, if drilling was not begun within a stipulated time, to pay a certain sum for the privilege of deferring operations for twelve months, and, after the execution of the lease, Evans conveyed to Leonard an equal one-half undivided interest in and to all the oil and gas and other minerals in the property contained in the lease. In a suit by Leonard against Caruthers, who had suc-

ceeded to the rights of Evans for one-half of the rent paid to defer the privilege as stipulated in the lease, the court held that Leonard had no right to any part of the money because "this money was paid for the privilege of drilling anywhere on the surface of the land; it did not arise from gas, oil, or other mineral."

The case of *Guess* v. *Harmonson*, 4 S. W. (2d) 124, was a case where the plaintiff, the owner of a tract of land, executed an "unless" oil and gas lease reserving one-eighth of the oil as royalty. As is customary, there was a stipulation that, if drilling should not be commenced on or before a certain date, the lease should terminate unless the lessee on or before that date should pay to a designated trustee a fixed sum of money, but upon the payment of which the lease should be extended for a period of six months, and that thereafter, upon payment of same amount, the time limit might be further extended for an additional six months, for a period of five years. During the life of this lease, the plaintiff sold a one-half interest in the oil and gas interest reserved by him to the defendant. The lease above mentioned having expired and having been terminated, plaintiff and defendant executed another lease of like character, which by assignment became the property of another and different company than the one to which the first lease was made. The lessee, not being able to begin drilling within the time limit first named, paid to the designated trustee the sum agreed upon for extending the period for drilling operations. Suit was instituted by the plaintiff against the defendant and the depository to determine the rights of the parties, the contention of plaintiff being that he was the owner of the fee simple title to the land, and the conveyance to the defendant was only for a one-half interest in the royalties to be obtained from oil and gas, when and after they were severed from the land, and did not entitle him to share in any of the rentals arising from the lease made at any time. The defendant on his part claimed

one-half of the rentals from the lease made any time on the lands. The court held that the defendant was not entitled to any rent, but only to his part of the royalties.

As we have seen, the reservation in this case is a one-sixteenth interest in all oil, gas and other mineral rights and properties in said lands ffor a period of ten years from the date of the execution of the deed. Our conclusion is that this reservation could not avail the Fitzhughs anything unless and until oil and gas might be discovered and reduced to possession, and that the rentals in no sense arise from the oil and gas, but are in payment for the privilege to enter upon the surface and drill for oil, which surface, being the exclusive property of O'Neal, entitles him only to the rent money. The chancellor properly sustained the demurrer of the Texas Company, and that part of the decree as to the Bank of Parkdale is correct. But we are of the opinion that the chancellor erred in ordering the payment of one-half of the $400 to the Fitzhughs, and think he should have found and decreed that O'Neal was the owner of the entire sum.

The decree of the Ashley Chancery Court is reversed, and the cause remanded with directions to enter a decree ordering that said $400 be paid to O'Neal, and the costs of the case adjudged against the Fitzhughs. The decree in all other respects is affirmed.