SEGARS *v.* GOODWIN.

4-5035

Opinion delivered May 23, 1938.

*J. V. Spencer* and *C. E. Love,* for appellants.
*Jeff Davis* and *J. A. O'Connor, Jr.,* for appellee.

McHANEY, J.  Appellants are the owners of 40 acres of land in Union county, described as southwest, northeast 15-19-14, and on January 9, 1936, entered into an oil and gas lease thereof with E. J. Powledge, trustee, for one year, with the right of renewal for four additional years, contingent on his depositing to the credit of the lessor in the First National Bank of El Dorado the sum of $40, on or before January 9 in each succeeding year, unless a well be sooner commenced thereon.  On June 10, 1936, appellants conveyed to appellee Goodwin by warranty deed "an undivided one-half (½) interest in and to all of the oil, gas and other minerals, in, under and upon" said lands, subject to said lease to said Powledge.  Said deed contained this further clause: "And for said consideration we do hereby grant and convey unto the said Shelton H. Goodwin and unto his heirs and assigns the right to collect and receive under the aforesaid lease such undivided one-half (½) part and interest of all oil royalties and gas rentals due or that may become due under the aforementioned lease."  On or about January 9, 1937, no well having been commenced by him, Powledge deposited to the credit of appellants

and appellee Goodwin, in said bank, $40 to renew the lease for another year. Thereafter, appellants brought this action to enjoin the bank from paying Goodwin any part of the deposit and to require the lessee to make future renewal deposits to their credit in said bank. To a complaint setting up the foregoing facts and also that, although said Goodwin was entitled to collect and receive one-half of all the oil and gas rentals due, he was not entitled to collect any part of the rental paid or to be paid to defer commencement of drilling operations under said lease, a demurrer was interposed and sustained, and the complaint dismissed. The case is here on appeal.

The question at issue is: Did the deed executed by appellants to Goodwin convey any interest in the rentals to be paid by the lessee to renew the lease, or to defer drilling operations? The learned trial court answered this question in the affirmative. After mature deliberation, we are of the opinion that this holding is correct.

The lease in question is not in the record, but we assume that appellants reserved the usual one-eighth royalty in addition to the consideration expressed therein. It will be seen that the deed from appellants to appellee, above quoted, conveyed an undivided one-half interest in and to all of the oil, gas and other minerals in, under and upon said lands. By this conveyance, appellee acquired a one-half interest in the minerals subject to the prior lease, which would have been true had the conveyance not expressly so held, as the lease was of record. We have held in at least two cases, and the right has been recognized in others, that oil, gas and other minerals are the subject of separate ownership. We so held in the case of *Bodcaw Lumber Co.* v. *Goode,* 160 Ark. 48, 254 S. W. 345, 29 A. L. R. 578, where we held, to quote a syllabus: "Minerals in land, including oil and gas, are part of the land until severed, and subject to ownership, separate from the ownership of the surface, and the mineral rights may be the subject of separate sale." There, the owner of the land in fee conveyed by deed, in which, by appropriate provisions, he reserved and excepted the fee simple title to the oil, gas and other minerals under

the land conveyed and it was held that this amounted to a segregation of the ownership of the minerals from the ownership of the remainder of the land. It would appear necessarily to follow that if he could reserve the minerals in his deed conveying the land, and thus segregate same, he could, by an appropriate conveyance pass title to the minerals, retaining title to the surface. In fact, we so held in *Rowland* v. *Griffin*, 179 Ark. 421, 16 S. W. 2d 457. In that case, one Alderson was the owner in fee of eighty acres of land and executed an oil and gas lease on it to Rowland, which was conveyed by mesne assignments to the Sun Oil Company. Thereafter, Alderson executed a mortgage on the land to Rowland to secure an indebtedness. While the lease was in effect, Alderson conveyed to Griffin "an undivided one-eighth of, and an interest in and to, all the oil, gas and other minerals in, under, and upon" said eighty acres of land, and "the deed gave to Griffin the right to collect 'such undivided one-eighth part and interest due us (Alderson and wife) or that may become due, as royalties under the aforesaid lease, should oil, gas or other minerals be produced thereunder.' " Thereafter, the oil and gas lease outstanding expired by its own terms because of the lessee's failure to drill upon the land and Rowland brought suit to foreclose his mortgage upon the land and failed to make Griffin, the grantee in the mineral deed, a party to the suit. A decree of foreclosure was granted, the commissioner's sale had, and Rowland became the purchaser of the land, receiving a commissioner's deed thereto which was approved by the court. Some years thereafter, Griffin, who had not been made a party to the foreclosure suit, brought his action against Rowland, claiming to be the owner of the mineral interest above stated, and praying the right of redemption, and this court held that Griffin was the owner of an undivided one-eighth interest in the oil, gas and other minerals in the eighty acres of land involved, and that he had the right to redeem from the mortgage *pro tanto*. We there said: "We are convinced therefore that the appellee, under his mineral deed, acquired an undivided one-eighth part of and interest in and to all the

oil, gas and other minerals in the eighty acres, and not simply an undivided one-sixty-fourth interest in the land, as appellants contend. True, the mineral deed of Alderson and wife to the appellee, conveying to him an undivided one-eighth of the minerals in the land, recites that it is subject to a certain mineral lease executed by the grantors to Rowland on September 5, 1919. But the appellants concede by their pleadings that the appellee, under the provisions of his deed and the lease, would have at least an undivided one-sixty-fourth interest in the gas, oil, and other minerals in the eighty acres of land. Appellants do not contend, as we have already said, that the appellee, under his deed, did not acquire any interest in the land at all; they do not contend that appellee acquired only an undivided interest in the rentals or royalties after severance of the oil, gas, or other minerals from the land. As to the interest acquired by the lessee in a lease for the development of oil and gas, see *Osborn* v. *Arkansas Ter. Oil & Gas Co.*, 103 Ark. 175, at p. 180, 146 S. W. 122.''

It will be noticed that the provisions in the deed conveying a mineral interest, in *Rowland* v. *Griffin,* are to the same effect, if not identical, with those in the case at bar, and that case is authority to the effect that appellee Goodwin became the absolute owner of an undivided one-half interest in and to the oil, gas and other minerals by the deed of appellants to him. Of course, it was subject to the lease and that if the lessee ever produces any oil and gas from the lease, appellee will be entitled to a one-half interest in the royalty or a one-sixteenth thereof. But suppose the lessee forfeits his lease, as he may do, as the only penalty stipulated in the lease for failure to pay renewal rentals is the forfeiture of the lease, then appellee and appellants would be the joint owners of all the oil, gas and other minerals under said lands, each owning a one-half interest. See, also, *Belleville Land & Lbr. Co.* v. *Griffith,* 177 Ark. 170, 6 S. W. 2d 36.

The effect of this conclusion is that since each of the parties, appellants and appellee, are the joint owners of the oil, gas and other minerals, they will each be entitled

to share in the renewal rentals in proportion to their respective interests and that should the lessee forfeit his lease, they would continue to be the owners of the whole interest and each would have to be consulted in the event of a new lease.

This view appears to be somewhat in conflict with some of the language used in *O'Neal* v. *Bank of Parkdale*, 180 Ark. 901, 23 S. W. 2d 257, where the late Judge BUTLER, speaking for the court, cited and relied upon the Texas case of *Caruthers* v. *Leonard*, 254 S. W. 779. The court said: "As we have seen, the reservation in this case is a one-sixteenth interest in all oil, gas and other mineral rights and properties in said lands for a period of ten years from the date of the execution of the deed. Our conclusion is that this reservation could not avail the Fitzhughs anything unless and until oil and gas might be discovered and reduced to possession, and that the rentals in no sense arise from the oil and gas, but are in payment for the privilege to enter upon the surface and drill for oil, which surface, being the exclusive property of O'Neal, entitles him only to the rent money." The reservation in the deed from the Fitzhughs to O'Neal in that case was: "The grantors reserve a one-sixteenth interest in all oil, gas and other mineral rights and properties in said lands for a period of ten years from this date." The court was careful to point out in that case the distinction between the reservation there made and other cases on the related subject by holding that the reservation was not an interest in the fee, but only a chattel real. It was there said: "This, when it appears from the language used in the deed that there was not an exception of the oil and gas, or any portion thereof, from the conveyance of the fee simple estate, but a reservation only of an interest in the same for a limited time, makes it apparent that the right reserved was not an estate in fee, but in the nature of a chattel real to become vested when the oil and gas has been discovered and reduced to possession." And in referring to the case of *Jackson* v. *Dulaney*, 67 W. Va. 309, 67 S. E. 795, and in distinguishing it from the case under consideration, the

court said: "The distinction between that case and the instant case is that in that case the exception from the original conveyance was an interest in the fee, whereas, in the case at bar, there was a reservation for a limited time of an interest therein." It will, therefore, be seen that the facts in the O'Neal case are quite different from those in *Rowland* v. *Griffin, supra,* and the instant case. There can be no doubt, and the court so held in *Rowland* v. *Griffin,* that the grantee in the mineral deed acquired an absolute interest in the fee to the oil and gas, just as the appellee in the case at bar. So, it will be seen that the conflict between *O'Neal* v. *Bank of Parkdale, supra,* and this case, is more apparent than real, but in order to settle the matter definitely, if it can be said to be in conflict with the present holding to any extent, then to that extent, it is expressly disapproved.

It follows from what we have said that the decree of the trial court is correct and is, therefore, affirmed.