# CHARLESTON

UPDEGRAFF v. BLUE CREEK COAL AND LAND COMPANY *et al.*

Submitted March 17, 1914.   Decided May 5, 1914.

MINES AND MINERALS—*Reservation of Oil and Gas.*

> The following exception and reservation in a conveyance of land, considered in connection with other provisions thereof, and in the light of the facts and circumstances alleged, is, in effect, a reservation of the oil and gas in place, though the lease therein referred to, at the suit of the lessor, was by decree in her favor, but after a gas well was drilled on the land by the lessee having a capacity of 250,000 cubic feet of gas per day, forfeited and removed as a cloud on her title, viz:
>
> "Also Excepting and Reserving from this conveyance and the warranty herein, all of the estate, right title and interest in and to the premises above described which were conveyed by said Louisa D. Cracraft, deceased, to James Townsend Russell by and instrument in writing bearing date January 28, 1901, and also excepting and reserving all the rents, royalties and compensation reserved by and agreed to be paid to said Louisa D. Cracraft by said James Townsend Russell in and by said written Agreement."
>
> (POFFENBARGER and WILLIAMS, JUDGES, dissenting.)

Appeal from Circuit Court, Kanawha County.

Suit by Louisa D. Updegraff against the Blue Creek Coal

& Land Company and others. From decree for plaintiff, the defendant named appeals.

*Affirmed.*

*Brown, Jackson & Knight, Chilton, MacCorkle & Chilton* and *T. S. Clark,* for appellant.

*Murray Briggs* and *Geo. E. Price,* for appellee.

MILLER, PRESIDENT:

The deed of April 9, 1902, from plaintiff to Burlew, trustee, under which defendants claim title to the 2,080 acres of land conveyed, and also to the oil and gas involved in this suit, contains this provision, and upon which this controversy depends:

"Also Excepting and Reserving from this conveyance and the warranty herein, all of the estate, right title and interest in and to the premises above described which were conveyed by said Louisa D. Cracraft, deceased, to James Townsend Russell by *and* instrument in writing bearing date January 28, 1901, and also excepting and reserving all the rents, royalties and compensation reserved by and agreed to be paid to said Louisa D. Cracraft by said James Townsend Russell in and by said written Agreement."

Alleging abandonment by Russell, lessee, after bringing in a gas well under said lease producing 250,000 cubic feet per day, and decree in her favor of December 1, 1908, in a suit brought by her in the circuit court to remove said lease as a cloud upon her title, and conceiving herself to be owner by virtue of said exception and reservation in her deed to Burlew, trustee, of all the oil and gas interest in said land, plaintiff filed her bill against defendants to also remove as clouds upon her title to said oil and gas a certain lease made by the Blue Creek Coal and Land Company, claiming under Burlew, trustee, to defendant, the Hope Natural Gas Company, purporting to cover said 2,080 acres, to enjoin operations for oil and gas under that lease, to quiet her title to said oil and gas, and for general relief.

The Blue Creek Coal and Land Company demurred to the bill and stood upon its demurrer not desiring to answer; the

Hope Natural Gas Company both demurred and answered. The demurrers were overruled, and the answer of the Hope Natural Gas Company not controverting any material allegation of the bill, the court, by the decree appealed from, adjudged, ordered and decreed that plaintiff was entitled to the relief prayed for, and that she is the owner of the oil and gas in said tract of land, with all the rights and privileges set forth in said lease from Louisa D. Cracraft to James Townsend Russell, mentioned in the exception and reservation in her deed to Burlew, trustee, and being of the opinion that the lease from the Blue Creek Coal and Land Company to the Hope Natural Gas Company, in so far as it includes or covers the oil and gas interest reserved aforesaid to plaintiff in her deed to Burlew, trustee, be set aside and removed as a cloud on her title to said oil and gas interests, and further decreeing that the lease executed by plaintiff to Hope Natural Gas Company, of April 26, 1909, is valid and binding on the parties thereto, and that said company is entitled to all the rights and privileges set forth therein.

The Blue Creek Coal and Land Company alone has appealed. As the Hope Natural Gas Company is protected by a lease from both claimants, subject to the decision of this case, its interests are not otherwise involved.

Both sides to the controversy agree that there is but one question presented, namely, what estate or interest in the oil and gas was reserved by Mrs. Updegraff in her deed to Burlew, trustee? The case has been twice argued orally by able counsel, first when it was originally submitted for decision, and again on the rehearing ordered, and has also been fully covered by briefs and supplemental briefs on both sides deserving particular mention because of the care and legal ability displayed by counsel in their preparation.

The position of appellant's counsel is, that the legal effect of said exception and reservation is the same or substantially the same as if in place of the terms actually employed Mrs. Updegraff had conveyed the land subject only to the lease to James Townsend Russell, and to the rents and royalties reserved therein which might accrue to her under that particular lease. On the other hand, she and her counsel contend that the effect thereof was as decreed by the court below

to reserve all the oil and gas, and all the oil and gas rental which at any time might accrue in the operation of the land therefor.

The deed from Burlew, trustee, to the Eastern Coal and Coke Company, his immediate successor in title, and the deed from the latter company to the Blue Creek Coal and Land Company, contain exactly the same exception and reservation as the deed to Burlew, trustee, so that we must determine the rights of the parties from the language employed in this exception and reservation, in the light of the facts alleged and the nature of the subject matter dealt with in the deeds and contracts.

We think the decree below in favor of plaintiff was clearly right. True what was excepted and reserved in Mrs. Updegraff's deed to Burlew, trustee, and excepted from her warranty, was, first, "all of the estate, right title and interest in and to the premises above described which were conveyed by said Louisa D. Cracraft" by the instrument of January 28, 1901, and, second, "all the rents, royalties and compensation reserved by and agreed to be paid" by lessee to lessor "by said written Agreement". What did the parties mean by these provisions? As we interpret the argument of counsel for appellant their position is that these exceptions and reservations were mainly, if not exclusively, for the benefit of the lessee, James Townsend Russell, and as to the first exception at least, that if the oil company had at any time by purchase or release from him gotten in "all of the estate, right title and interest" which were conveyed to him, it would have held the premises acquit of them, and now that his estate, &c., has been terminated by the terms of the lease or the decree of the court the same have dropped into its lap under the deed to Burlew, trustee, and that all rents, &c., have also lapsed with the lease.

We cannot accede to these propositions. First, let us inquire what was "all of the estate, right title and interest" conveyed to Russell? By the terms of the deed or lease "the exclusive right * * * * for the purpose of drilling for petroleum, gas and water", also "to lay, maintain and remove lines of pipe", &c., "for and during the term of one year, from the date hereof, or as long as oil or gas shall be

found in paying quantities", and with the privilege of renewal · "for a further period of one year upon the same conditions and at the option of the party of the second part." The lease also contains the provision that, "The party of the second part, within nine months from the date hereof is to commence operations upon the premises with the object in view of discovering oil or gas, otherwise the lease to be void and of no effect." It was decided in *Wilson* v. *Youst,* 43 W. Va. 826, that: "An oil lease, investing the lessee with the right to remove all the oil in place in the premises, in consideration of his giving the lessors ·a certain per cent. thereof, is, in legal effect, a sale of a portion of the land, and the proceeds represent the respective interests of the lessors in the premises." It is conceded that if Russell, lessee, after bringing in the gas well had gone on producing gas, or oil and gas, Mrs. Updegraff would have been sole beneficiary of all rents and royalties accruing under that lease, regardless of the time such operations might have continued. And we think it must be further conceded that as lessor she had the right to renew that lease, for the one year period, and to enforce or waive forfeiture, and to avoid the lease for abandonment or other cause. Certainly it was not in the minds of the parties to the deed, nor may it be properly implied from the provisions of the deed, that the rights of forfeiture and other provisions for enforcing the lease, which our decisions say are provisions for benefit of lessor, were thereafter to be exercised and enforced by Burlew, trustee, or those for whom he took title, or those holding under him. *Hukill* v. *Myers,* 36 W. Va. 639; *Roberts* v. *Bettman,* 45 W. Va. 143; *Henne* v. *South Penn Oil Co.,* 52 W. Va. 192. If so they could have defeated plaintiff's rights by exercising those powers, not conferred. As we think Mrs. Updegraff, in the exercise of her rights as lessor, could have extended the lease, waived forfeitures, and was entitled to all the usufruct arising from the operations of the land for oil and gas under that lease, when she elected to avail herself of one of her rights as lessor, namely, to treat the lease as forfeited for abandonment, the legal effect of her act and of the decree in her favor, was to leave invested in her right and title to the oil and gas, and that the exclusive right to operate said land for the purpose of drilling for

petroleum, gas and water, granted to said Russell, lessee, reverted to her. We do not think it can be implied from the terms of her deed that her grantee Burlew, trustee, or the beneficiaries of his trust, were intending to speculate on the chances of Russell not operating the land. He did operate the same and produced gas. If he had gone on the clear effect of the exception and reservation would have been to except all the oil and gas; that he did not do so, and the only one entitled to declare a forfeiture for abandonment exercised that right, it seems to us, the effect thereof and of said decree was to leave the title to the oil and gas where it was immediately before Mrs. Updegraff's grant. That such was the purpose thereof is strengthened by the provisions in her contract with John L. Dickinson, trustee, pursuant to which that grant was made. That contract provided plainly for reserving the oil and gas. While appellant is not shown to have had notice of this contract, and would not be bound by it, we think it is manifest from the contemporaneous and subsequent actions and conduct of the parties that such was their intention and that such was indeed the effect of plaintiff's deed.

Besides the oil and gas rentals reserved in the deed of lease to Russell, it contained rights and reservations in favor of the lessor other than those already mentioned, and appurtenant to the estate and interest excepted and reserved by Mrs. Updegraff in her deed, manifesting to some extent at least the intent of the parties, namely, the right of the lessor to twelve and one half cents per acre, annual rental provided in the lease, the rental of one hundred dollars a year for each gas well, the right or option to sell the royalty in the event oil should be found, and other rights incident to such a lease.

We are not unmindful of the technical distinction between an exception and a reservation in a deed. The draftsman in the deed from plaintiff to Burlew, trustee, used both terms conjunctively, both in respect to the estate, right, title and interest conveyed to Russell, and also in respect to the rents, royalties and compensation reserved in the deed of lease. It is argued by counsel that these terms were advisedly used by the draftsman because of the nature of the estate con-

veyed and excepted or reserved.    The rents, royalties and compensation excepted and reserved included of course those which the lessee agreed to pay, and we think that the effect of the deed was to except all the oil and gas, including all royalties that might thereafter accrue under such an estate, right, title and interest as was conveyed to Russell, lessee, or which might thereafter accrue under any estate, right, title and interest which the lessor might convey, measured by the terms and limitations of the Russell lease.    Upon the principles of *Toothman* v. *Courtney,* 62 W. Va. 167, it is conceded, that if the deed of Mrs. Updegraff had in plain terms reserved all the rental or royalty to be derived from the oil in place, the court here, as was said in that case, would be compelled to hold by construction of the instrument that the reservation vested title in Mrs. Updegraff to that thing, to-wit, to oil in place, the beneficial use whereof she would have so reserved.

In our opinion the provisions in the deed involved here present a stronger case for the construction we have given it than was presented in *Toothman* v. *Courtney.*    As the parties to that deed must have contemplated operations by Russell under his lease and the taking of the oil and gas according to its terms and provisions, and could not have been speculating on the chances of his doing so, no consideration could have been paid by Burlew, trustee, for any estate or interest in the oil and gas excepted, and it seems clear to us that justice and equity, as well as a proper construction of Mrs. Updegraff's deed requires affirmance of the decree appealed from.

*Affirmed.*

POFFENBARGER, JUDGE, *(dissenting):*

In my opinion the rules of interpretation and construction, applicable to deeds, do not sustain the conclusion expressed in the decision of this case, and, for that reason, I am unable to concur in it.

If the clause upon which the plaintiff relies was ambiguous and there remained a doubt as to its meaning after the application of the ordinary rules of interpretation, that doubt would have to be resolved against her, she being the grantor. *Williams* v. *South Penn Oil Co.,* 52 W. Va., 181; *Turk* v.

*Skyles,* 45 W. Va., 84; *Chapman* v. *Mill Creek Coal Co.,* 54
W. Va., 103; *Allen* v. *Yeater,* 17 W. Va., 128.

But the clause in question is not in any sense ambiguous,
and the effect accorded to it by the decision necessitates the
reading thereof as if it contained words that are not found
in it. The specific terms used, excepting the existing lease
and reserving to the grantor the particular rentals, royalties
and compensation provided for by it and nothing more, are
by construction so broadened and extended as to make them
reserve the oil and gas in place. There is not a word in it,
applicable to the subject of oil and gas in place. Every
word in it applies to the lease and goes not a whit beyond it.
The first of its two parts excepts and reserves ''all the estate,
right, title and interest in and to the premises above described
which were conveyed by the said Louisa D. Cracraft, deceased,
to James Townsend Russell by *and* instrument in writing
bearing date January, 28th 1901.'' That instrument did
not convey the oil and gas in place. It was nothing more
than an oil and gas lease. Nobody seriously claims or pre-
tends that it was, or that it passed title to the oil and gas in
place. Nor could any such claim stand in the face of the
authorities. *Toothman* v. *Courtney,* 62 W. Va., 167; *Harvey
Coal Co.* v. *Dillon,* 59 W. Va., 605; *State* v. *South Penn Oil
Co.,* 42 W. Va., 80.

No such doctrine is asserted in *Wilson* v. *Youst,* 43 W. Va.,
826. That case merely deals with rights in the product of
mining operations under the lease, in view of its relation to the
land before severance. It holds nothing more than that a
widow is entitled to the use of one third of the royalties,
because they represent something taken from the land of
which she is dowable, in the exercise of the privilege con-
ferred by the lease. Not a word in the opinion says the
lessee obtains title to the oil and gas in place. His lease con-
fers a right of severance. He has a mere working privilege
and no title to the oil or gas, until he brings it to the surface.

Such a privilege forfeitable for non-compliance with
onerous conditions is all that was ''conveyed'' to James
Townsend Russell, and the clause relied upon excepts only
the right, title and interest ''which were conveyed'' to him
by that certain lease, (no other), ''dated January 28th

1901.'' No other lease is referred to and no other estate or right is excepted. Hence, to make the exception include anything more is to make an unwarranted addition to the terms used in the clause. Such addition is unwarranted because the limiting clause is clear, plain and emphatic, excluding even the appearance or suspicion of ambiguity. Such is the character of the second part of the clause also. Observe that it withholds only the ''rents, royalties and compensation reserved by and agreed to be paid to the said Louisa D. Cracraft by the said James Townsend Russell in and by said written agreement.'' Not a word in it goes beyond rights conferred by the lease or imports a shadow or suggestion of intent to do so.

The first part merely excepts the lease to the end that the grantor might not be liable on her warranty in consequence thereof, for the deed would not have destroyed it, had no such exception been made. The second part had for its purpose the avoidance of the legal effect of the conveyance, upon such rents and royalties as might possibly arise or accrue by reason of the lease. Without a reservation thereof, they would have passed to the grantee, under the legal rule that the owner of land, in the absence of a stipulation to the contrary, is entitled to the rents, issues and profits thereof, arising under a lease thereon previously made. Here are two plain purposes for the clause, one for each part thereof and the terms used are so limited as to accomplish those purposes and nothing more.

Notwithstanding the use of the word, ''reserving,'' as well as the word, ''excepting,'' in the first part, it can mean nothing more than ''excepting.'' As this part contemplated only a thing antecedently created by the lease and already existent, it cannot be created by the deed. It existed independently of the deed. In other words, the thing ''reserved'' was in its nature the subject matter of an exception as the term is defined in law, and if, in such cases, the word, ''reserve,'' is used instead of ''except,'' it has the same effect necessarily as if the proper word had been used. The thing done, not the form of expression used, governs and controls. A reservation creates a new right respecting the thing granted and withholds it to the grantor. That was an impossibility in this

instance. The subject matter had been previously created by the lease. It could not be reserved to the grantor, because she had already granted it to James Townsend Russell. By no possibility, therefore, can the first part of the clause legally operate as a reservation. In order to give it any legal effect, it must be treated as an exception.

To say she reserved that which had not been granted to Russell or something more than she had granted to him, plainly conflicts with the terms of the clause, for it excepts and reserves only estate, right, title and interest "which were conveyed * * * * * by an instrument in writing bearing date January 28th 1901," the lease. It does not except all that estate, right, title and interest in respect of which she had granted something to him, the land, oil and gas. She never conveyed any of them to him. She conveyed only a lease of the land with a conditional working privilege in the minerals, and that is all the terms of the exception cover.

The conduct of the parties and the other extraneous evidence relied upon are wholly immaterial and inadmissible. A plain, clear, unambiguous contract must speak for itself and parol evidence is not admissible to vary or contradict its terms. No matter what the parties did or said contemporaneously or subsequently, such a contract must be permitted to operate and be enforced according to its legal effect deduced from the written or printed words. *Uhl* v. *Ohio River R. Co.*, 51 W. Va., 106; *Crislip* v. *Cain*, 19 W. Va., 483; *West Va. Trans. Co.* v. *Pipe Line Co.*, 22 W. Va., 614; *Tucker* v *Cocke*, 2 Rand. 51. Such evidence is let in only to interpret ambiguous or doubtful contracts. Consideration of the antecedent contract with Dickinson, Trustee, is barred by the same general principle. If it had been between the grantor and Burlew, Trustee, and the deed made in pursuance thereof, it would be inadmissible and inefficacious to control the plain terms of the latter. It was merged in the deed and, in so far as its terms differ from the deed, they were annulled by it, and the deed became the last, final and controlling embodiment of the contract. Thereafter, the preliminary contract became *functus officio. Newberger* v. *Wells et als.*, 51 W. Va., 624, 629; 28 Am. Eng. Ency. L. 132, 140. If the deed were uncertain as to its meaning, the antecedent contract

might be looked to as mere wreckage and debris marking the path traveled by the parties in reaching their final agreement expressed in the deed and constitute a mere circumstance bearing on the question of intent; but it cannot be so considered or regarded in the interpretation of a deed clear, plain and free from ambiguity as this one is.

An erroneous view of counsel as to the right of the grantee in the deed, respecting the lease, if any, is a matter of no consequence. If the lease contained no covenant binding the lessee to drill or operate, and, in consequence thereof, the grantee, by the purchase of Russell's leasehold, would have been in a position to avoid it or render it unfruitful by mere non-action, failure to operate, that circumstance 'is entitled to no weight in the consideration of the clause in question. It cannot extend the terms of the lease. What right the lease created, be it small or great, is all that was excepted. If Russell had proceeded with his exploration and found oil or gas in large quantities, the grantor in the deed would have derived a very substantial benefit. As it turned out, she had a contingent right, a supposedly valuable one at the time, wherefore the argument *reductio ad absurdum* clearly has no application. Had Russell developed and made the lease fruitful and refused to sell to the grantee, the latter could not in any way have destroyed the right reserved by the grantor as I interpret the exception.

Had there been a reservation in terms of all rentals and royalties, as in the lease construed in *Toothman* v. *Courtney* and some others, I would readily concur in the decision, but there is nothing of the kind. Only the rentals and royalties to accrue under a particular and specified lease were reserved. No case has been found, or can be, in my opinion, that goes as far as this decision.

For these reasons, Judge WILLIAMS and I dissent from the opinion and decision of the majority of the court.