McWilliams *v.* Standard Oil Company.

4-6990                                                 170 S. W. 2d 367

Opinion delivered April 5, 1943.

*A. A. Thomason* and *Wade Kitchens,* for appellant.

*J. A. O'Connor, Jr., Robert C. Knox* and *Gaughan, McClellan & Gaughan,* for appellee.

Smith, J. On July 15, 1919, appellants, Dr. C. T. McWilliams and his wife, executed an oil and gas lease on land located near the town of Village, in Columbia county, to E. I. Newblock, which recited the following consideration: "In consideration of the premises the said lessee covenants and agrees: (1) To deliver to the

credit of the lessor free of cost in tanks or pipe lines to which it may connect its wells, the equal one-eighth of all oil produced and saved from the leased premises; (2) to pay to the lessor two hundred dollars each year in advance for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making his own connections with the well and at his own risk and expense; (3) to pay lessor for gas produced from any oil well used off the premises at the rate of twenty-five dollars per year, for the time during which such gas shall be used, said payments to be made each three months in advance.''

The lease contained a provision requiring the beginning of a well within five miles of the leased premises within six months of the date of the lease. It contained a provision for the annual payment of delay rentals which, when paid, operated to extend the life of the lease although no well had been drilled. About the first of January, 1920, Newblock spudded in and drilled a well, which was not a producer, about two miles from the leased land, and Dr. McWilliams testified that Newblock thereafter ''paid the rentals for awhile.''

On December 22, 1919, McWilliams and his wife executed a warranty deed to thirty acres of the land covered by the lease to Newblock. This was the usual warranty deed, but immediately preceding the habendum clause the following paragraph appears: ''It is expressly agreed and stipulated that a one-half undivided interest in and to the royalty retained by grantor in oil and gas leases heretofore executed covering aforesaid land, is hereby reserved by grantor herein.''

It is stated and not questioned that the Newblock lease expired by its own terms not later than July 15, 1924. Neither oil nor gas was found in Columbia county until some years later, and oil was not found at Village, near this property, until May 26, 1938, and was not produced on the leased land until November 21, 1939.

A. F. Jameson, the grantee in the warranty deed from McWilliams and wife, died in 1929, and was survived by his widow and three daughters.

McWilliams testified that he and Jameson went together to an abstracter of land titles and an attorney-at-law to prepare the deed, and that he explained to the scrivener that he wished to reserve one-half interest in the royalty in the land, and that the scrivener explained to the parties, while drafting the deed, that a one-half interest of the royalty in a deed automatically carried one-half of the lease rights and it was not necessary to set up the lease rights. However, it is undisputed that the scrivener prepared the deed as he was directed to do, and, if there was a mistake as to the effect of the deed, it was a mistake of law, and not one of fact, the mistake being as to the effect of the language employed. *Louis Werner Saw Mill Co.* v. *Sessoms,* 120 Ark. 105, 179 S. W. 185; *Security Insurance Co.* v. *Leeper,* 171 Ark. 77, 284 S. W. 12; *Magnolia Petroleum Co.* v. *McFall,* 178 Ark. 596, 12 S. W. 2d 15.

However, the question of mistake and the right of reformation of the deed to Jameson, because of the mistake, passed out of the case as is shown by the following colloquy between counsel for the Jameson heirs and the court, which occurred after the introduction of all the testimony and during the course of the argument upon the submission of the case to the court for decision:

"By the Court: Mr. Kitchens, as I understand it, you have abandoned your plea for reformation—is that correct? By Mr. Kitchens: Yes, sir, I don't think it is necessary for me to ask that the deed be reformed. (Aside.) If they want it reformed, let them ask for it. By Mr. Knox: I don't care to have it reformed. We are not asking that."

After the rendition of the decree, appellants filed a motion for a rehearing and asked permission to reinstate their prayer for reformation upon the ground of newly discovered evidence. This motion was disposed of in an order reading as follows: "On this 22nd day of May, 1942, come the parties hereto, and the motion to set aside decree

and grant a new hearing and for decree favorable to plaintiffs is heard by the court at this time. The court, being well and sufficiently advised as to all matters of law and fact herein, is of the opinion that the motion be overruled.''

We are unable to say this was error for several reasons, a sufficient one being that this was a matter within the discretion of the court and we are unable to say this discretion was abused.

After the death of Jameson, McWilliams applied to the widow and heirs of Jameson to correct the deed given Jameson by McWilliams and, upon the refusal of the widow and heirs to do so, this suit was brought to compel an accounting for the royalties collected on the land sold Jameson by McWilliams under an oil lease made by the widow and heirs of Jameson on December 16, 1937, to L. M. Shadbolt, who on the same day assigned the lease to the Standard Oil Company.

After the Standard Oil Company obtained an assignment of this lease it made what is called a unitization agreement with the lessee of other lands for the development of the tract of land here in question to conform to the rules of the Conservation Commission. A recital of the facts disclosed by the record in this case as to this agreement would tend only to confuse the issue presently to be discussed, which we think is controlling here.

After counsel for McWilliams had disclaimed any desire to have the deed reformed, the court stated that the only question left for decision was that of the construction of the deed, and the opinion was announced by the chancellor that the construction of the deed was controlled by the opinion of this court in the case of *Keaton* v. *Murphy,* 198 Ark. 799, 131 S. W. 2d 625, and upon that view dismissed the case as being without equity, and from that decree is this appeal.

We agree that the case just cited is controlling of the issue here presented. This case is cited in the note to § 602 appearing in vol. III, Summers Oil and Gas, packet part where it was said: ''In *Keaton* v. *Murphy,* 198 Ark. 799, 131 S. W. 2d 625, Murphy executed an oil

and gas lease to the Trinity Petroleum Corporation, reserving a one-eighth royalty. Murphy then conveyed the land, subject to the lease to the Trinity Petroleum Corporation, to the Murphy Land Company. The Murphy Land Company then conveyed an undivided one-half of the royalty interest to Keaton and Sebersky.

"The deed recited that the grantor '. . . grant, bargain, sell and convey unto the said R. A. Keaton and Samuel Sebersky, trustees, and unto their heirs and assigns, an undivided one-half interest of the one-eighth royalty held by the Murphy Land Company in and to all the oil and gas in, under and upon the (described lands; . . . Subject, however, to certain oil and gas leases executed by the Murphy Land Company on the 29th day of October, 1919, unto the Trinity Petroleum Corporation on said lands which lease is recorded. . . . And for said consideration it does hereby grant and convey unto the said R. A. Keaton and Samuel Sebersky, trustees, and unto their heirs and assigns, the right to collect and receive under the aforesaid lease such undivided one-half of one-eighth interest of all oil royalty and gas rentals due us or that may become due us under the aforesaid lease.'

"The court held that the interest conveyed was limited to royalties arising under the existing lease to the Trinity Oil Corporation."

This author had previously stated at § 602 of the permanent edition that: "Where a lessor conveys a royalty interest only and by specific reference to the existing lease limits the grant or reservation to the rents and royalties arising from that lease, the royalty interest expires upon the termination of the existing lease."

It thus appears that Professor Summers has stated the law as we declared it to be in the Keaton case, and in the note to the Supplement, *supra,* the Keaton case was cited as sustaining the rule previously announced by Professor Summers.

We think the court below was correct in holding that this case is controlled by the Keaton case. There, Murphy in 1919 executed an oil lease to the Trinity Petroleum

Corporation, retaining a one-eighth royalty, and thereafter the land convered by the lease was conveyed to the Murphy Land Company subject to the Trinity lease. Later, Keaton and another purchased a one-half interest in the one-eighth royalty held by the Murphy Company "in and to oil and gas in, under and upon (40 acres of land included in the Trinity lease)." Upon these facts the question for decision was stated to be "Did Keaton acquire a one-sixteenth interest in oil and gas that might be produced from the 40 acres or were they limited to gas and oil resulting from the Trinity operations?"

In answering that question it was there said: "We think the deed of December 3, 1921, conveyed only a one-half interest in the one-eighth royalty, and that it did not, as appellant contends, convey a one-sixteenth interest 'in and to all the oil and gas in, under and upon' the described property. The interest conveyed is an interest in the royalty, not in the minerals in place, independent of the royalty. The words 'in and to' relate to the oil and gas interests identified by the Trinity lease —that is, the royalty held by the Murphy Land Company and retained by C. H. Murphy when he leased to Trinity."

So here, McWilliams executed the lease to Newblock, above recited, and thereafter conveyed the land leased Newblock to Jameson by a warranty deed containing the paragraph that: "It is expressly agreed and stipulated that a one-half undivided interest in and to the royalty retained by grantor in oil and gas lease heretofore executed covering aforesaid land, is hereby reserved by grantor herein."

Upon the authority of the Keaton case, *supra,* we must affirm the holding of the court below that all rights reserved by McWilliams in the deed to Jameson expired with the Newblock lease. The opinion in the case of *O'Neal* v. *Bank of Parkdale,* 180 Ark. 901, 23 S. W. 2d 257, announced principles conforming to this view. Here, the deed from McWilliams to Jameson refers to an outstanding lease which, without question, was the lease from McWilliams to Newblock, and limits the reservation to royalties accruing from a lease "heretofore executed,"

which is the lease from McWilliams to Newblock, and that lease has admittedly expired so that the interest reserved has also expired.

The following, among other cases cited in the brief of appellee, support our holding in *Keaton* v. *Murphy, supra: Rogers* v. *Jones,* 40 Fed. 2d 333; *Calcasieu Oil Company* v. *Yount-Lee Oil Company,* 141 So. 55, 174 La. 547; *Elk Horn Coal Corp.* v. *Casebolt,* 38 Fed. 2d 37; *Leydig* v. *Commissioner of Int. Rev.,* 43 Fed. 2d 494; *Miller* v. *Sooy,* 120 Kan. 81, 242 Pac. 140; *Bellport* v. *Harrison,* 123 Kan. 310, 255 Pac. 52; *Gillispie* v. *Blanton,* 214 Ky. 49, 282 S. W. 1061; *Curlee* v. *Anderson,* (Tex.) 235 S. W. 622; *Updegraff* v. *Blue Creek Coal & Land Co.,* 74 W. Va. 316, 81 S. E. 1050; *Brown* v. *Sugar Creek Syndicate,* 195 La. 865, 197 So. 583.

The decree of the court below conforms to our own cases, and the adjudged cases of other jurisdictions, and must, therefore, be affirmed, and it is so ordered.

McFADDIN, J., not participating.