TOMLINSON *v.* WILLIAMS.

4-7892                                                194 S. W. 2d 197

Opinion delivered May 13, 1946.

*Wils Davis* and *T. J. Crowder,* for appellant.

*Bruce Ivy, Myron T. Nailling* and *A. F. Barham,* for appellee.

HOLT, J.   Appellee, L. H. Williams, December 10, 1942, sued Hugh D. Tomlinson, Susie M. Tomlinson, Harold and D. Ohlendorf, and Hugh Dillahunty, in the Mississippi Circuit Court, Osceola District, for possession of a 400 acre tract of land.   He alleged in his complaint that he was entitled to possession under the terms of a written lease dated June 28, 1940, for three years, beginning January 1, 1941, for a cash rental of $10 per acre, payable October 1st of each year, and that under the terms of the contract, he was required to pay, and paid $500 to the Tomlinsons for the year 1941.   He alleged that the

Tomlinsons breached the lease by refusing to surrender possession and by leasing the land to the Ohlendorfs subsequent to the aforesaid lease to him. Dillahunty was a tenant of the Ohlendorfs. Appellee prayed for possession, and damages in the amount of $10,000, for the alleged unlawful detention and breach of contract.

Appellants' answer was as follows: "1. Defendants deny each and every of the material allegations of the complaint. II. The defendants for further answer allege that the plaintiff, L. H. Williams, had no personal interest in the alleged contract between himself and the defendants, Hugh D. Tomlinson and Susie M. Tomlinson, and any rights which he may have taken by reason thereof were held by him solely and in trust for the use and benefit of his son, Lan Williams, and Hugh T. Ross who had formed a partnership for the purpose of engaging in the farming business, and the acceptance of said contract in the plaintiff's name was for the special use and benefit of said partnership, and these defendants never at any time had any dealings with the plaintiff except when he was acting as the agent of the said Lan Williams and Hugh T. Ross. III. Defendants Hugh D. Tomlinson and Susie M. Tomlinson for further answer allege that the contract mentioned in the complaint was by mutual agreement between them and said partnership canceled. Said contract should have been so written as to show that L. H. Williams was in truth and fact acting as trustee for Lan Williams, his son, and Hugh T. Ross for it was so understood. Therefore said contract should now be reformed to show said facts. Wherefore, defendants pray that this answer be treated also as a motion to transfer this cause to the chancery court and upon a hearing said contract be reformed to show L. H. Williams trustee for the use and benefit of Lan Williams and Hugh T. Ross. That upon a final hearing of this action, the complaint be dismissed, and for general and equitable relief."

On the same date, December 10, 1942, appellee brought a similar action against appellant, Beulah A. Ross, the Ohlendorfs and Dillahunty, the Ohlendorfs and

Dillahunty being tenants. The same allegations in effect were made in this complaint as in the Tomlinson suit. The lease contract sought to be enforced covered a 400 acre tract of land; however, it was to run for three years beginning January 1, 1942, and appellee advanced to Mrs. Ross $400 to apply on the 1942 rental. The rent per acre was the same. Similar allegations of breach of the contract were alleged and there was a prayer for possession and damages in the amount of $12,000, and for the return of the $400 advanced to Mrs. Ross. Appellants filed the same answer in effect as in the Tomlinson case, in fact, it was identical except for the necessary change in the names of defendants.

The two causes were transferred to equity in accordance with appellants' prayer and consolidated for trial. Upon a hearing, the court found the issues in favor of the plaintiff (appellee), and, quoting from the decree, "that the contracts entered into between the plaintiff, L. H. Williams, and the defendants, Hugh D. Tomlinson and Susie M. Tomlinson, and between the plaintiff and the defendant, Beulah Ross, were and are rental contracts between him and said defendants and that said contracts were not made by the plaintiff as trustee or for the benefit of Hugh T. Ross and Lan Williams, but were made by the plaintiff for his sole use and benefit. The court further finds that the defendants, Hugh D. Tomlinson and Susie M. Tomlinson, breached their contract with the plaintiff, as alleged in his complaint, thereby damaging him in the sum of $1,800, and that the defendant, Beulah Ross, breached her contract with the plaintiff as alleged in his complaint, thereby damaging him in the sum of $1,800, which said sums, with interest thereon at six per cent. per annum from this date, and his costs herein expended the plaintiff is entitled to recover of and from said defendants."

A decree was entered in accordance with these findings and this appeal followed. Appellee also has appealed, but only from that part of the decree which limited his damages in each case to $1,800.

Appellants say the issues are: ''(1) Is the contract dated June 28, 1940, valid? (2) Is the contract dated July 17, 1940, valid? (3) In the consummation of the aforesaid contracts, was the plaintiff, L. H. Williams, acting as a trustee for Lan Williams and Hugh Ross? (4) If the contracts are valid and breached by the defendants, then what is the measure of damages for the breach?''

*(1) and (2)*

Appellants argue that both contracts were invalid because neither was signed, or executed, by certain trustees who they say controlled and managed the two tracts involved; and that the Ross contract, although it designated Beulah A. Ross, Hugh Ross and Ruth Ross as lessors and appellee as lessee, was signed by Beulah T. Ross and Hugh Ross as lessors and appellee 'as lessee, and that the Tomlinson contract was signed by Susie M. Tomlinson and Hugh D. Tomlinson as lessors and appellee as lessee, and does not mention other alleged owners in common of the land and, as above noted, was not executed by certain trustees. We think all of these contentions untenable for the reason that we are unable to find from the record before us, or the abstract, any competent evidence that any designated trustees, by will or otherwise, were empowered and authorized to control and handle the two tracts of land in controversy here or that appellants executed the contracts without right. The contracts make no mention of trustees or the extent of the interest of the lessors therein. It also appears clear from the defenses interposed in appellants' answers and from the decree, *supra,* that the causes were presented and tried on the theory presented by appellants under (3) and (4), *supra.*

*(3)*

On the third proposition, appellants contend that when appellee, L. H. Williams, entered into the contracts with appellants, he was acting as trustee for his son, Lan Williams, and Hugh T. Ross, and not for himself individually, that such was the intention of the parties and that the contracts should be reformed to correct this

mutual mistake. We cannot agree with this contention. The terms of both contracts are plain and unambiguous. Both are signed by L. H. Williams, lessee, in his individual capacity. Nothing was said in either contract indicating that he was acting as trustee for anybody. "To entitle a party to reform a written instrument upon the ground of mistake, it is essential that the mistake be mutual and common to both parties; in other words, it must be found from the testimony that the instrument as written does not express the contract of either of the parties. It is also necessary to prove such mutual mistake by testimony which is clear and decisive before a court of equity will add to or change by reformation the solemn terms of a written instrument." *Corey* v. *The Mercantile Insurance Company of America,* 205 Ark. 546, 169 S. W. 2d 655.

"Equity will reform written, instruments only where there is a mutual mistake or where there has been a mistake of one party accompanied by fraud or other inequitable conduct of the other party." *Loutre Lumber Co.* v. *Kinard,* 158 Ark. 642, 236 S. W. 817.

In *McGuigan* v. *Gaines,* 71 Ark. 614, 77 S. W. 52, this court, quoting from Bishop on Contracts, § 708, said: "In no case will a court decree an alteration in the terms of a duly executed written contract, unless the proofs are full, clear, and decisive. Mere preponderance of evidence is not enough. The mistake must appear beyond reasonable controversy." Also, there is quoted with approval from the Circuit Court of the United States in *United States* v. *Monroe,* 5 Mason 577: "In cases of asserted mistakes in written instruments, it. is not denied that a court of equity may reform the instrument, but such a court is very slow to exercise such an authority, and it requires the clearest and strongest evidence to establish the mistake. It is not sufficient that there be some reason to presume a mistake; the evidence must be clear, unequivocal, and decisive."

Again, in *Goodrum* v. *Merchants & Planters Bank,* 102 Ark. 326, 144 S. W. 198, Ann. Cas. 1914A, 511, Judge

FRAUENTHAL, speaking for the court, said: "It has been uniformly held that where a written contract is plain, unambiguous and complete in its terms, parol evidence is not admissible to add to or vary it. It has been said by this court: 'Antecedent propositions, correspondence and prior writings, as well as oral statements and representations, are deemed to be merged into the written contract which concerns the subject-matter of such antecedent negotiations when it is free of ambiguity and complete.' . . . But, to entitle a party to reform a written instrument upon the ground of mistake, it is essential that the mistake be mutual and common to both parties; in other words, it must be found from the testimony that the instrument as written does not express the contract of either of the parties thereto. It is also necessary to prove such mutual mistake by testimony which is clear and decisive before a court of equity will add to or change by reformation the solemn terms of a written instrument."

Here, no fraud or inequitable conduct on the part of appellee has been shown,—in fact, no fraud has been alleged. While appellants testified that it was understood that appellee in the execution of the contracts was acting as trustee for his son and Hugh T. Ross, appellee stoutly contradicted their testimony. It is significant, as above noted, that no mention is made in either contract of a trustee. There was nothing on the face of either contract to indicate that appellee was acting otherwise than for himself as an individual. Here, all parties to the contracts, as far as the evidence discloses, were capable of contracting and were dealing at arms length. As we view the evidence, it falls far short of being of that clear, full, decisive and convincing character that the law requires to entitle appellants to reformation of the contracts.

## (4)

On the fourth proposition, the rule for the measure of damages for breach of contracts, such as are presented here, was announced by this court in *Person* v. *Williams*, 125 Ark. 174, 187 S. W. 1063, as follows: "The books

agree that in the action by a lessee against a lessor for damages for refusal or failure to deliver possession of the demised premises, the general rule for the measure of damages is the difference between the rent reserved and the value of the premises for the term.'' This is in accord with the general rule given by the annotator in 104 A. L. R. in a note to *Weiss* v. *Revenue Bldg. & Loan Association,* 116 N. J. L. 208, 182 A. 891, subdivision III, a-1: ''It is clearly the general rule that the damages recoverable for a lessor's failure to put his lessee into possession under a lease of real property are measured by the excess, if any, of the rental value of the premises for the term demised over the rent agreed upon in the lease; or, as it is sometimes expressed, the fair value of the use of the premises,'' and in support of the text, seven Arkansas cases are cited, including the early case of *Rose* v. *Wynn,* 42 Ark. 257, the case of *Person* v. *Williams, supra,* and *Howell* v. *Duty,* 178 Ark. 1196, 10 S. W. 2d 857.

The evidence on the amount of damages was in irreconcilable conflict. However, after a careful review of it all, we have reached the conclusion that the trial court's findings are not against the preponderance thereof. In weighing the testimony, it should be borne in mind that the contracts here were executed in 1940, prior to our entrance into World War II, and we take judicial notice that rental values of farm land materially increased during the subsequent years covering the term for which the two tracts were leased by appellee.

In *Reiman* v. *Rawls,* 188 Ark. 983, 68 S. W. 2d 470, this court held that we take judicial notice of matters of common knowledge such as ''a period of great depression and that land values have decreased'' (headnote 1), and in *Jefferson* v. *Souter,* 150 Ark. 55, 233 S. W. 804, it was held (headnote 4): ''It is a matter of common knowledge that lands appreciated greatly in value between January, 1912, and January, 1917.''

In 23 C. J., p. 59, § 1810, the text writer says: ''Courts may properly take judicial notice of facts that may be regarded as forming part of the common knowl-

edge of every person of ordinary understanding and intelligence.''.

In this connection, it is of some significance that the great majority of appellants' witnesses, numbering some fifteen, testified that the rental value of the two tracts was approximately $10 per acre (the same as reserved in the two contracts, *supra*) for the years 1941, 42, 43 and 44, making no allowance for increased values due to the war emergency. The testimony of appellee's witnesses, on the other hand, (some ten in number) who were situated in as good, if not better, position to judge values, in the circumstances here, placed the average rental values over the rent term at approximately $17 per acre. Hugh Dillahunty, a subtenant on parts of the two tracts of land in controversy here, testified that he had farmed in the south end of Mississippi county since 1933 and was familiar with the fair rental values of the Tomlinson and Ross lands for 1942, 43 and 44, and it was $15 per acre, which was the amount that he was paying as a subtenant.

It could serve no useful purpose to comment at length on the testimony. It suffices to say that we have reached the conclusion that the findings of the trial court, as above noted, are not against the preponderance of the testimony, and accordingly, the decree on both appeals is affirmed, appellants to pay all costs.