**CLAMPITT et al. v. PONDER et al.**
Civ. No. 503.

United States District Court
W. D. Arkansas, El Dorado Division.
June 29, 1950.

Claude B. Crumpler (of Crumpler & O'-Connor), El Dorado, Ark., for plaintiffs.

T. O. Abbott and Norman R. Abbott (of Abbott & Abbott), El Dorado, Ark., for defendants.

JOHN E. MILLER, District Judge.

By complaint filed February 10, 1950, the plaintiffs seek a construction of a reservation contained in a warranty deed executed by I. O. Ponder, deceased, and the defendant, S. E. Ponder, her surviving husband. Also, the plaintiffs ask that, if the court is unable to construe the reservation as having expired with the expiration of the oil and gas lease in effect at the time the deed was executed, the court construe the reservation to be what is commonly referred to as a nonparticipating perpetual royalty interest.

The defendants, on March 7, 1950, filed an answer and cross-complaint in which they admit that the plaintiffs are the owners of the land described in the complaint, except an undivided one-half of the oil, gas and other minerals in and under said land. The defendants admit that they are claiming to be the owners of an undivided one-half interest in the oil, gas and other minerals in the land by virtue of the reservation contained in the deed. In their cross-claim, the defendants allege that, at the time the deed was executed by I. O. Ponder and the defendant, S. E. Ponder, the surviving husband of I. O. Ponder, now deceased, the meaning of the term, royalty, had no "clear, definite meaning to the ordinary layman, or even to most lawyers, as it now has but was used loosely and synonymously with 'minerals' ", that it was the intention of the grantors in the deed to the plaintiff, Clampitt, and was so understood by the plaintiff that the grantors, I. O. Ponder and the defendant, S. E. Ponder, her surviving husband, were reserving an undivided one-half interest in in the oil, gas and other minerals in and upon the land, and that the deed should be reformed so as to reflect the true intentions of the parties thereto.

By reply filed March 22, 1950, the plaintiffs deny that it was the intention of I. O. Ponder and the defendant, S. E. Ponder, as her surviving husband, to reserve from the grant contained in the deed under which plaintiffs claim all the oil, gas and other minerals in the lands, and further deny that there has been any change in the meaning of the word, "royalty," to the ordinary layman or to most lawyers since the execution of the said deed, and deny that the said term, "royalty," in said deed was used loosely and synonymously with minerals.

On June 12, 1950, the defendants filed a motion for judgment on the pleadings under Federal Rules of Civil Procedure, rule 12(c), 28 U.S.C.A., and for summary judgment under rule 56(a). The plaintiffs responded to the motion, and on the same date the court entered an order overruling the motion for judgment on the pleadings and for summary judgment. Thereupon, the cause proceeded to trial to the court, without a jury, and at the conclusion of the trial the attorneys for the respective parties requested an opportunity to furnish briefs in support of their respective contentions. The plaintiffs were given five days in which to file their brief and the defendants were given five days thereafter in which to file their brief, and plaintiffs were given an additional five days thereafter in which to file a reply brief, if they

538

so desired. Said briefs have been received and considered by the court, along with the pleadings, the ore tenus testimony and exhibits, and the court now makes and files herein its formal Findings of Fact and Conclusions of Law, separately stated:

## Findings of Fact

### 1.

The plaintiff, F. L. Clampitt, is a citizen and resident of the State of Louisiana and plaintiff, John T. Harley, is a resident and citizen of the State of Oklahoma. The defendants are all residents of Union County, Arkansas.

The amount involved herein exceeds in value the sum of $3,000.00, exclusive of interest and costs.

### 2.

Prior to December 29, 1920, the plaintiff, F. L. Clampitt, became acquainted with the defendant, S. E. Ponder, and wife, I. O. Ponder, now deceased. At that time the Ponders were living on a farm other than the land involved herein. A few days before December 24, 1920, the plaintiff, Clampitt, called upon the defendant, S. E. Ponder, who at that time was working in one of the fields on the land involved. The plaintiff stated that he desired to buy some land in that area, which is approximately sixteen miles southwest of the City of El Dorado, Arkansas. He was advised by the defendant, S. E. Ponder, that the tract on which he was working contained two-hundred acres and was owned by his wife, I. O. Ponder, but that they would sell the same to him for a consideration of $2,-500.00, $500.00 of which was to be paid in cash and the balance to be evidenced by notes of $500.00 each, one of which was to be paid each year with interest until all were paid.

The testimony does not disclose whether the plaintiff, Clampitt, talked to Mrs. Ponder at that time, but apparently he returned to his home and claims to have written S. E. Ponder a letter containing an offer to purchase the land. Neither the letter nor a copy of it was introduced in evidence, but there was introduced in evidence a letter addressed to the plaintiff, Clampitt, dated December 24, 1920, signed by the defendant, S. E. Ponder, reading as follows:

"As offered in your letter of 20th inst. I will accept as settlement for tract of 240 acres of land a cash payment of $500. and four notes of $500. each, payable annually, with 8% interest.

"I, of course, will retain half of the royalty;—that is one sixteenth. Awaiting your reply, I am

"Very truly,
/s/ S. E. Ponder".

The testimony does not disclose any reply by plaintiff, Clampitt, to Ponder's letter of December 24, 1920, but on December 29, 1920, a warranty deed was executed by I. O. Ponder in which her husband, the defendant, S. E. Ponder, joined, under the terms of which the grantor, I. O. Ponder, conveyed to the plaintiff, F. L. Clampitt, and unto his heirs and assigns the N½ of the SE¼ of Section 16; the N½ of SW¼ of Section 15 and the NW¼ of the SE¼ of Section 15, all in Township 19 South, Range 18 West, in Union County, Arkansas, and containing two-hundred acres, more or less.

Immediately following the description of the land and as a part of the granting clause of the deed appears the following: "I, I. O. Ponder, hereby reserve one half royalty of all oil, gas and other minerals on the above described land."

The defendant, S. E. Ponder, joined with his wife in the execution of the deed and it and the blank notes were sent to the Central State Bank in Muskogee, Oklahoma, where the deed and notes remained until January 31, 1921, at which time the cash payment of $500.00 was made, the notes executed and the deed was delivered to the plaintiff, F. L. Clampitt.

The plaintiff, John T. Harley, paid one-half of the cash payment and apparently assumed payment of one-half of the notes, and the plaintiff, F. L. Clampitt, and wife executed and delivered to the plaintiff, Harley, their warranty deed conveying an undivided one-half interest in the lands.

### 3.

At the time the deed was executed, there was outstanding an oil and gas lease that had been executed by I. O. Ponder and S. E. Ponder to Paul Tatum, Trustee, covering the lands purchased by the plaintiff, Clampitt. The oil and gas lease provided that the grantors therein reserved "an equal one-eighth royalty or share of all oil produced and saved upon the premises." The lease also provided that, in the event the drilling of a well for oil or gas was not commenced and prosecuted with due diligence within one year from the date of the lease, the same should immediately become null and void, provided that the lessee might prevent such forfeiture by paying to the lessors quarterly or annually the sum of $21.00 for an additional period.

The lease was recorded May 19, 1919. It was known by the plaintiff, Clampitt, that at the time he purchased the land that the lease had been executed and was outstanding, and after his purchase had been completed and the deed conveying the land to him had been placed of record on April 21, 1921, the lessee paid him delay rentals for a time. The lessee also paid delay rentals to the Ponders for the remainder of the five year period of the lease. During the oral discussions between the plaintiff, Clampitt, and the defendant, S. E. Ponder, prior to December 24, 1920, nothing was said by either about the oil, gas and mineral rights, and the first mention of them was made in Ponder's letter of December 24, 1920. The plaintiff made no protest or answer to the letter.

### 4.

At the time the deed was accepted by the plaintiffs, Clampitt and Harley, and at the time they made the $500.00 cash payment and executed the notes for the remainder, they knew that the deed contained the reservation hereinbefore set forth.

The discovery oil well in Union County, Arkansas, was completed on January 10, 1921, at a point approximately fifteen miles northeast of the land involved herein.

There has been no lease executed upon the lands involved herein other than the lease executed by the Ponders on May 2, 1919, and which was outstanding at the time the plaintiff, Clampitt, purchased the land until recently. The Sinclair Oil Company has agreed to pay the plaintiffs the sum of $4,000.00 for a lease upon the land and has paid the plaintiffs $2,000.00 of said sum, with the understanding that the remaining $2,000.00 is being held until it is determined whether the defendants own an undivided one-half interest in the oil, gas and minerals.

### 5.

I. O. Ponder died two or three years prior to the filing of this suit, leaving surviving her husband, S. E. Ponder, and as her only heirs at law the other defendants.

The defendant, S. E. Ponder, is now eighty years of age and his memory is not clear about events that happened approximately thirty years ago, the date of the execution of the deed.

The plaintiff, F. L. Clampitt, is not so old as the defendant, S. E. Ponder, but his recollection of the negotiations and events preceding the purchase of the land and for a few years subsequent thereto is not entirely clear and vivid.

The plaintiff conferred with two lawyers in El Dorado after he had accepted the deed as written and as tendered to him. He also talked to a lawyer at Muskogee, Oklahoma, but he was unable to state whether the conference was before or after his acceptance of the deed. He was not certain of the date of his conference with the lawyers at El Dorado, but it was admitted by the parties that the lawyers named by him did not become residents of El Dorado until after oil was discovered in Union County, Arkansas, on January 10, 1921. The plaintiff testified that the lawyers advised him that the reservation contained in the deed would expire upon the expiration of the oil and gas lease that was in force at the time the deed was executed.

### 6.

The plaintiff testified that he had some discussion with Mrs. I. O. Ponder in the absence of S. E. Ponder prior to the date of the deed, but the question of the reserva-

540

tion of oil, gas and minerals was not discussed.

Subsequent to the execution of the deed by Mrs. I. O. Ponder and her husband and the delivery to the plaintiff, Clampitt, he attempted to obtain a conveyance by the Ponders to him of their interest in the land which they had reserved in the deed. He testified that he contended at all times that the reservation expired with the expiration of the lease, but the Ponders contended that their interest in the oil, gas and minerals did not expire with the expiration of the lease. At one time, prior to the death of Mrs. I. O. Ponder and before the land became valuable for oil and gas, S. E. Ponder stated that he would accept $100.00 for their interest, but the offer was not accepted by the plaintiffs, either because they did not think the interest was worth that much money or they thought that they owned all of the oil, gas and mineral interest.

## 7.

George L. Hanry, Justice of the Peace, wrote the deed and appeared as a witness. He is a farmer and seventy-eight years old; and testified that S. E. Ponder told him when he asked him to prepare the deed that they wanted to reserve one-half of the minerals in the lands. He suggested to Mr. Ponder that no reservation be included in the deed, but for them to convey the land to the plaintiff, Clampitt, and then take a separate conveyance from Clampitt back to them of an undivided one-half interest in the oil, gas and minerals; that a short time before the suit was filed he told the plaintiff, Clampitt, that he suggested the interest in the minerals be handled in that manner, but Ponder stated that he thought the reservation in the deed would be sufficient and that he feared that Clampitt might not execute a separate deed reconveying an interest in the minerals.

### Discussion

The reservation or exception which the court is called upon to construe reads: "I, I. O. Ponder, hereby reserve one half royalty of all oil, gas and other minerals on the above described land."

In determining this controversy the court must give effect to the intention of the parties as gathered from the deed in its entirety, or "from its four corners", even though, in so doing, technical rules of construction are violated. Carter Oil Co. v. Weil, 209 Ark. 653, 661, 192 S.W.2d 215; McBride v. Conyers, 212 Ark. 1034, 1036, 208 S.W.2d 1006. If the language of the instrument is unambiguous, it would be the duty of the court to give effect to the intention of the parties as it appears from the instrument itself, regardless of what the parties now say as to what their intention was at the time of the execution of the deed. The court was of the opinion that the language of this reservation or exception was ambiguous, and therefore permitted the parties to adduce evidence to assist the court in determining what the intention of the parties to the deed was at the time of the execution thereof. As appears from the findings of fact, the ore tenus testimony adduced on this point is inconclusive. This transaction occurred some 30 years ago, and the grantor, I. O. Ponder, is now deceased. In all probability the parties to the deed had a different understanding as to the legal effect of the reservation or exception in question.

There is no longer any question in this state but that a proper reservation or exception of the mineral rights in a tract of land effectively separates the estate in the minerals from the estate in the surface. And, although there is a technical difference between a reservation and an exception, immaterial here, effect is given to the intention of the parties regardless of designation, Bodcaw Lumber Company v. Goode, 160 Ark. 48, 254 S.W. 345, 29 A.L.R. 578, and hereinafter the portion of the deed in question will be referred to as a reservation.

It is first contended by the plaintiffs that the effect of the reservation was to create a one-half royalty interest in the grantor, I. O. Ponder, in the oil and gas to be produced under the then existing lease, from I. O. and S. E. Ponder to Paul Tatum, Trustee, and that the interest created by the reservation expired with the termination of that lease.

Such has been the holding in two Arkansas cases, Keaton v. Murphy, 198 Ark. 799, 131 S.W.2d 625, and McWilliams v. Standard Oil Co., 205 Ark. 625, 170 S.W.2d 367, 369. The facts in both cases brought them within the statement appearing in Vol. 3 Summers Oil and Gas, Sec. 602, approved in the McWilliams case, supra: "Where a lessor conveys a royalty interest only and by specific reference to the existing lease limits the grant or reservation to the rents and royalties arising from that lease, the royalty interest expires upon the termination of the existing lease."

In the Keaton case, supra, the court found it to be the intention of the parties to limit the interest to the then existing lease, and in the McWilliams case, there was an express limitation to this effect.

 In the instant case, if there were a specific reference to the existing lease or if the court could conclude that it was the intention of the parties to so limit the reservation, the rule of the Keaton and McWilliams case, supra, would be controlling, and the court would hold in accordance therewith. However, there is no specific reference to the existing lease, and it does not clearly appear from the instrument itself or the testimony adduced that such was the intention of the parties. Certainly the mere use of the word, "royalty", in a reservation does not of itself compel the conclusion that only leases then in existence are included. In fact, the Supreme Court of Arkansas has given a very substantial legal standing to a reservation or grant of royalties in Arrington v. United Royalty Co., 188 Ark. 270, at page 276, 65 S.W.2d 36, 38, 90 A.L.R. 765, wherein it stated, " * * * and we now announce the rule to be that royalties in gas [and] oil, until brought to the surface and reduced to possession, are interests in real estate and not personal property." Furthermore, it is noted that the reservation included "oil, gas and other minerals", whereas the then existing lease included only gas and oil. Therefore, the court concludes that, inasmuch as the reservation does not refer to the then existing lease and it does not clearly appear that such

was the intention of the parties, the interest created by I. O. Ponder in the reservation did not expire with the termination of the lease in existence on the date the reservation was made.

Do the defendants own an undivided one-half nonparticipating royalty interest in and under said lands or do they own an undivided one-half of the oil, gas and other minerals in place in and under said lands?

 The following statement from Volume 3, Summers Oil and Gas, Sec. 599, is pertinent to this question: "The term 'oil and gas royalty' usually refers to the returns made by an oil and gas lessee to his lessor for the privilege of exploring for and producing oil and gas from the demised land. But since the courts have recognized that a landowner, prior to any lease for oil and gas purposes, may grant or reserve a royalty interest, the term royalty must have a broader meaning than that above stated. The last mentioned royalty is commonly termed a perpetual nonparticipating royalty. If properly created by grant or reservation, it entitles the owner to a share of the minerals produced by the landowner or any future lessee. The principal difficulties which have arisen in the courts respecting this type of royalty interest and its creation have been due to its confusion with the ordinary separate estate in minerals, commonly called a mineral fee."

There are numerous decisions from other jurisdictions reaching various results which, for present purposes, demonstrate little other than how the question was resolved under the facts of the particular cases. See: Vol. 3, Summers Oil and Gas, Sec. 599, and cases cited therein; Annotation, 4 A.L.R.2d page 492 et seq. As expressed in Vol. 3, Summers Oil and Gas, Sec. 599, page 483: "The courts have merely held that certain language under particular sets of circumstances do or do not create a mineral fee or royalty interest. Litigation of this type will undoubtedly continue unabated until such time as the legal profession is able, by the process of

trial and error, to discover a proper formula for conveyances of this sort."

■ Since this controversy concerns interests in property with its situs in the State of Arkansas, the court must follow the Arkansas law as announced by the Supreme Court of this State. Edward Hines Yellow Pine Trustees v. Martin, 268 U.S. 458, 45 S.Ct. 543, 69 L.Ed. 1050; Dierks Lumber & Coal Co. v. Meyer, D.C.W.D. Ark., 85 F.Supp. 157, 161.

■ Defendants rely upon the case of Arrington v. United Royalty Co., supra, which held, as previously stated, that unaccrued royalties are interests in real estate and not personal property. This holding, however, is as consistent with a perpetual royalty interest as with a mineral fee. In either event, the holder of the interest would have an interest in real estate as distinguished from personal property. There is language in the case to the effect that the grant of one-half of the royalties is a grant of one-half of the oil in place, but the court does not read the opinion as holding that a reservation or exception of royalties is thereby a reservation or exception of the mineral fee. There is certainly a distinction in the law between royalty and mineral rights, and the court believes that in the final analysis it must give effect to the intention of the parties regardless of the language used, unless, of course, the particular language has acquired a definite meaning under the law in which event the parties are precluded by their language even though they did not understand the legal results thereof. The court does not believe that "royalties" has acquired such a definite meaning in Arkansas. Thus, in the Keaton and McWilliams cases, supra, effect was given to the intention of the parties to create a royalty interest only for the life of existing leases.

■ It is significant that the grantor, I. O. Ponder, used "royalty" in the reservation rather than the usual language of "minerals" or "mineral rights" when a mineral fee is intended. Mr. Hanry, who prepared the deed, testified that he was familiar with "royalty", "half royalty" and "quarter royalty". When S. E. Ponder representing I. O. Ponder wrote the letter of December 24, 1920, to the plaintiff, Clampitt, "I, of course, will retain half of the royalty;—that is one sixteenth", he obviously had reference to a royalty interest rather than a mineral interest, else he would not have referred to one sixteenth as being commensurate with one half. The inference is irresistible that he had reference to one half of the usual royalty interest retained by a lessor, one eighth. This desire is understandable since at that time exploratory operations were being conducted in Union County, and the discovery well was completed a short time thereafter, January 10, 1921. Furthermore, it is noteworthy that the reservation of a mineral, or for that matter a royalty, interest was never discussed by the parties to the deed prior to the execution thereof. And, although the plaintiff, Clampitt, accepted the deed with the reservation therein without protest, and therefore is charged with the legal effect thereof, it clearly was not his intention that the reservation reserve a mineral fee.

From all of the circumstances the court can reach no other conclusion but that the intention was to reserve a perpetual royalty interest merely and not a mineral fee. Such being the case the scope of the reservation remains to be determined.

■ As stated in the annotation in 122 A.L.R. page 959: "As correctly used, it seems clear that "Royalty" does not include delay rentals (citing cases) or bonus (citing cases)."

In construing a mineral reservation, the Supreme Court of Arkansas, in O'Neal v. Bank of Parkdale, 180 Ark. 901, 907, 23 S.W.2d 257, 259, said: "As we have seen, the reservation in this case is a one-sixteenth interest in all oil, gas and other mineral rights and properties in said lands for a period of ten years from the date of the execution of the deed. Our conclusion is that this reservation could not avail the Fitzhughs anything, unless and until oil and gas might be discovered and reduced to

possession, and that the rentals in no sense arise from the oil and gas, but are in payment for the privilege to enter upon the surface and drill for oil, which surface being the exclusive property of O'Neal, entitles him only to the rent money."

Recognizing that the reservations in the O'Neal case, supra, and in the instant case are not identical, yet, the reasoning of the O'Neal case is analogous, and is as applicable to bonus payments for a lease as for delay rentals thereunder.

The grantor, I. O. Ponder, did not reserve the right to participate in the leasing of the property, the bonus payments or delay rentals under future leases and nowhere does it appear that such was the intention of the parties. She reserved a one half royalty interest in the oil, gas and other minerals, and when and if oil, gas and other minerals are discovered and reduced to possession, defendants will be entitled to said one half royalty interest, but not until then. In short, defendants' one half royalty interest is a perpetual nonparticipating royalty interest.

As to the counterclaim of the defendants for reformation, to entitle a party to reform a written instrument on the ground of mistake, it is essential that the mistake be mutual and common to both parties. The testimony must show that the instrument as written does not express the contract of either of the parties. Tomlinson v. Williams, 210 Ark. 66, 70, 72, 194 S.W.2d 197, and cases there cited. The above is the rule unless it appears that there was a mistake on the part of one of the parties, coupled with fraud on the part of the other. Dodson v. Abercrombie, 212 Ark. 918, 922, 208 S.W.2d 433. Here, there is no allegation or claim by the defendants that the plaintiffs were guilty of fraud. There was no mutual mistake of fact. The grantors were fully advised of the provisions of the deed when they executed it and in the absence of fraud practiced upon them they are charged with the legal effect of their intended language in the reservation. Dodson v. Abercrombie, supra. Mere mistake of a party as to the legal effect of an instrument does not vitiate the instrument or afford ground for reformation. Crews v. Crews, 212 Ark. 734, 738, 207 S.W.2d 606, and cases there cited.

The defendants are not entitled to a reformation of the terms of the reservation in the deed, and the rights of the parties are fixed by their intention as expressed in the reservation, as previously discussed and determined.

### Conclusions of Law

#### 1.

The court has jurisdiction of the parties and of the subject matter of this cause.

#### 2.

By the reservation in the deed executed December 29, 1920, by I. O. Ponder, in which her husband, S. E. Ponder, joined, I. O. Ponder reserved to herself and her heirs a one half perpetual nonparticipating royalty interest in all oil, gas and other minerals, which entitled her or her heirs and assigns to receive a one half royalty interest in any oil, gas and other minerals discovered on, in or under said described lands and reduced to possession in the future.

Defendants, their heirs and assigns are not entitled to participate in the leasing of said described lands, in any bonus payments made for any present or future leases, or in any delay rental payments made under any present or future leases.

#### 3.

Defendants are not entitled to a reformation of the reservation in the said deed.

#### 4.

Judgment should be entered, fixing the rights and interests of the respective parties in accordance with the above, with the parties paying the costs incurred by them.